## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KINDI SPALDING, as Personal Representative for
the Estate of JESSICA SPALDING, Deceased,

                                      Case No

      Plaintiff,                    Hon.

v.

EATON COUNTY, a Municipal Entity, OFFICER
DOUG R. SHARP, OFFICER DENNIS GERBER,
OFFICER CARRIE HUNT, OFFICER DON HAGA,
SHERIFF THOMAS REICH, UNDERSHERIFF
JEFFREY COOK, CAPTAIN ROBERT JORDAN,

CITY OF LANSING, a Municipal Entity, OFFICER
MELISSA OUDERKIRK, OFFICER PETER SCACCIA,
OFFICER JAMERIA CALDWELL, SERGEANT
RODNEY ANDERSON, OFFICER ELIZABETH
BARNHILL, OFFICER ALAN BERISH, OFFICER
JASON DAVIS, OFFICER ROBERT DAVIS,
SERGEANT KATHERINE DIEHL, SERGEANT
CHARLES FUNK, OFFICER JACOB GRANT,
OFFICER RAYMONE GUDE, OFFICER LANA
HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER
BRIAN KELLEY, OFFICER REBECCA KOPF,
OFFICER PATRICIA LAYNE, OFFICER KURT
MARTENS, SERGEANT GUY PACE, OFFICER
LORRIE RIDENOUR, OFFICER GREGG
ROSENBERY, OFFICER DAMON SHERRILL,
SERGEANT RYAN WILCOX, OFFICER CHARLES
WRIGHT, CHIEF MICHAEL YANKOWSKI, in heir
Individual and Official Capacities,

INGHAM COUNTY, a Municipal Entity, DEPUTY
JEFFREY CHAPPELL, PATRICK CRANE  DNP, RN,
CAROL HILL FNP, KENNETH TYLER RN,
JENNIFER HAMPTON RN, JONELLE BORSETH RN,
DEPUTY CHARMAINE HAWKINS,  LIEUTENANT
DANIELLE PATRICK, DEPUTY CHELSEA
STEWART, DEPUTY HEATHER SALAZAR, DEPUTY
NICHOLAS WAGNER,           DEPUTY TORREZ,
DEPUTY MORGAN GHYRA, DEPUTY BRINAH
COOK, DEPUTY CONNER PLANTZ, DEPUTY

RODOLFO GAYTAN, DEPUTY RYAN WATTS,
DEPUTY DARROLL GATSON, SERGEANT
THOMAS AGUEROS, DEPUTY CHRIS HAGERMAN,
DEPUTY SANDRA DOUSE,   DEPUTY MATTHEW
WATTERS, DEPUTY NATHAN SMITH, SERGEANT
MELISSA BROWN, SHERIFF SCOTT
WRIGGLESWORTH, UNDERSHERIFF ANDREW
BOUCK, MAJOR SAM L. DAVIS, in their Individual
and Official Capacities,

      Defendants.

---

GEOFFREY N. FIEGER (P30441)
JAMES J. HARRINGTON, IV (P65351)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorneys for Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555

EDWAR A. ZEINEH  (P71923)
Co-Counsel for Plaintiff
1704 East Michigan Avenue
Lansing, MI 48912
(517) 292-7000
zeinehlaw@gmail.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES, Plaintiff, KINDI SPALDING, as Personal Representative for the

Estate of JESSICA SPALDING, deceased, by and through her attorneys, FIEGER,

FIEGER, KENNEY & HARRINGTON, P.C., and EDWAR A. ZEINEH and for her

Complaint and Reliance on Demand for Jury Trial against the above named Defendants,

Plaintiff hereby states as follows:

## JURISDICTION AND VENUE

1.     This action arises under the United States Constitution, particularly under

the provisions of the Fourth, Eighth, and Fourteenth Amendments to the United States

Constitution and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the statutes and common law of the State of Michigan.

2.     This court has jurisdiction over this cause of action under the provisions of 28 U.S.C. §§ 1331 and 1343.

3.     The unlawful actions alleged in this Complaint took place within the County of Eaton and the County of Ingham, State of Michigan, and as such jurisdiction lies in the United States District Court for the Western District of Michigan (Southern Division). Venue is proper under 28 U.S.C. §1391(b).

4.     The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs and attorney fees.

## PARTIES

5.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

6.     At all times relevant to this lawsuit, JESSICA SPALDING, was a resident of the City of Lansing, County of Ingham, State of Michigan.

7.     Plaintiff, KINDI SPALDING, is the duly appointed Personal Representative for the Estate of JESSICA SPALDING, deceased, who lives in the City of Lansing, County of Ingham, State of Michigan.

8.     At all times relevant hereto, Defendant EATON COUNTY was a municipal corporation, duly organized in carrying on governmental functions in the County of Eaton, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Eaton County Jail.

9.      At all times relevant hereto, Defendant DOUG R. SHARP, was an officer employed by Eaton County who was acting under the color of state law within the course and scope of his employment with Eaton County and was acting under the color and pretense of ordinances, regulations, laws and customs of Eaton County, and is being sued in his individual capacity.

10.      At all times relevant hereto, Defendant DON HAGA, was an officer employed by Eaton County who was acting under the color of state law within the course and scope of his employment with Eaton County and was acting under the color and pretense of ordinances, regulations, laws and customs of Eaton County, and is being sued in his individual capacity.

11.      At all times relevant hereto, Defendant DENNIS GERBER, was an officer employed by Eaton County who was acting under the color of state law within the course and scope of his employment with Eaton County and was acting under the color and pretense of ordinances, regulations, laws and customs of Eaton County, and is being sued in his individual capacity.

12.      At all times relevant hereto, Defendant CARRIE HUNT, was an officer employed by Eaton County who was acting under the color of state law within the course and scope of her employment with Eaton County and was acting under the color and pretense of ordinances, regulations, laws and customs of Eaton County, and is being sued in her individual capacity.

13.      Defendant SHERIFF THOMAS REICH, is the Sheriff of Eaton County who is responsible for controlling and overseeing the Jail of Eaton County as well as its deputies and jail staff and is being sued in his official capacity.

14.    Defendant UNDERSHERIFF JEFFREY COOK, is the Undersheriff of Eaton County who is responsible for controlling and overseeing the Jail of Eaton County as well as its deputies and jail staff and is being is being sued in his official capacity.

15.    Defendant CAPTAIN ROBERT JORDAN, is the Jail Administrator of Eaton County who is responsible for controlling and overseeing the Jail of Eaton County as well as its deputies and jail staff and is being is being sued in his official capacity.

16.    At all times relevant hereto, Defendant CITY OF LANSING was a municipal corporation, duly organized in carrying on governmental functions in the County of Ingham, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Lansing Police Department.

17.    At all times relevant hereto, Defendant MELISSA OUDERKIRK, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

18.    At all times relevant hereto, Defendant PETER SCACCIA, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

19.    At all times relevant hereto, Defendant JAMERIA CALDWELL, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting

under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

20.     At all times relevant hereto, Defendant RODNEY ANDERSON, was a Sergeant employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

21.     At all times relevant hereto, Defendant ELIZABETH BARNHILL, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

22.     At all times relevant hereto, Defendant ALAN BERISH, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

23.     At all times relevant hereto, Defendant JASON DAVIS, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

24.     At all times relevant hereto, Defendant ROBERT DAVIS, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

25.     At all times relevant hereto, Defendant KATHERINE DIEHL, was a Sergeant employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

26.     At all times relevant hereto, Defendant CHARLES FUNK, was a Sergeant employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

27.     At all times relevant hereto, Defendant JACOB GRANT, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

28.     At all times relevant hereto, Defendant RAYMONE GUDE, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting

under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

29.    At all times relevant hereto, Defendant LANA HADZAJLIC, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

30.    At all times relevant hereto, Defendant KRISTIN HUDSON, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

31.    At all times relevant hereto, Defendant BRIAN KELLEY, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

32.    At all times relevant hereto, Defendant REBECCA KOPF, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

33.    At all times relevant hereto, Defendant PATRICIA LAYNE, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

34.    At all times relevant hereto, Defendant KURT MARTENS, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

35.    At all times relevant hereto, Defendant GUY PACE, was a Sergeant employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

36.    At all times relevant hereto, Defendant LORRIE RIDENOUR, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of her employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in her individual capacity.

37.    At all times relevant hereto, Defendant GREGG ROSENBERY, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting

under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

38.     At all times relevant hereto, Defendant DAMON SHERRILL, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

39.     At all times relevant hereto, Defendant RYAN WILCOX, was a Sergeant employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

40.     At all times relevant hereto, Defendant CHARLES WRIGHT, was an officer employed by the City of Lansing who was acting under the color of state law within the course and scope of his employment with the City of Lansing and was acting under the color and pretense of ordinances, regulations, laws and customs of the City of Lansing, and is being sued in his individual capacity.

41.     Defendant CHIEF MICHAEL YANKOWSKI, is the Chief of the Lansing Police Department who is responsible for controlling and overseeing the City of Lansing Jail as well as its detentions and jail staff and is being is being sued in his official capacity.

42.     At all times relevant hereto, Defendant INGHAM COUNTY was a municipal corporation, duly organized in carrying on governmental functions in the

County of Ingham, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Ingham County Jail.

43.    At all times relevant hereto, Defendant PATRICK CRANE, DNP, RN, was a Jail Nurse who was an employee, agent, and/or ostensible agent of Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

44.    At all times relevant hereto, Defendant JONELLE BORSETH, RN, was a Jail Nurse who was an employee, agent, and/or ostensible agent of Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

45.    At all times relevant hereto, Defendant CAROL HILL FNP, was a Jail Nurse who was an employee, agent, and/or ostensible agent of Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

46.    At all times relevant hereto, Defendant KENNETH TYLER RN, was a Jail Nurse who was an employee, agent, and/or ostensible agent of Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances,

regulations, laws and customs of Ingham County, and is being sued in his individual and official capacities.

47.    At all times relevant hereto, Defendant JENNIFER HAMPTON RN, was a Jail Nurse who was an employee, agent, and/or ostensible agent of Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

48.    At all times relevant hereto, Defendant CHARMAINE HAWKINS, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

49.    At all times relevant hereto, Defendant JEFFREY CHAPPELL, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

50.    At all times relevant hereto, Defendant DANIELLE PATRICK, was a Lieutenant employed by Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

51.     At all times relevant hereto, Defendant CHELSEA STEWART, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

52.     At all times relevant hereto, Defendant HEATHER SALAZAR, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

53.     At all times relevant hereto, Defendant NICHOLAS WAGNER, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

54.     At all times relevant hereto, Defendant TORREZ, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

55.     At all times relevant hereto, Defendant MORGAN GHYRA, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the

color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

56.     At all times relevant hereto, Defendant BRINAH COOK, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

57.     At all times relevant hereto, Defendant CONNER PLANTZ, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

58.     At all times relevant hereto, Defendant RODOLFO GAYTAN, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

59.     At all times relevant hereto, Defendant RYAN WATTS, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

60.    At all times relevant hereto, Defendant DARROLL GATSON, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

61.    At all times relevant hereto, Defendant THOMAS AGUEROS, was a Sergeant employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

62.    At all times relevant hereto, Defendant TYRON CALKINS, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

63.    At all times relevant hereto, Defendant CASEY HAAPAPORO, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

64.    At all times relevant hereto, Defendant TAYA INSIXIENGMAY, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the

color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

65.    At all times relevant hereto, Defendant JASON BUCKNER, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

66.    At all times relevant hereto, Defendant CHRIS HAGERMAN, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

67.    At all times relevant hereto, Defendant SANDRA DOUSE, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

68.    At all times relevant hereto, Defendant MATTHEW WATTERS, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of his employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in his individual capacity.

69.    At all times relevant hereto, Defendant NATHAN SMITH, was a Deputy employed by Ingham County who was acting under the color of state law within the course and scope of their employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in their individual capacity.

70.    At all times relevant hereto, Defendant MELISSA BROWN, was a Sergeant employed by Ingham County who was acting under the color of state law within the course and scope of her employment with Ingham County and was acting under the color and pretense of ordinances, regulations, laws and customs of Ingham County, and is being sued in her individual capacity.

71.    Defendant SHERIFF SCOTT WRIGGLESWORTH, is the sheriff of Ingham County who is responsible for controlling and overseeing the Jail of Ingham County as well as its deputies and jail staff and is being is being sued in his official capacity.

72.    Defendant UNDERSHERIFF ANDREW BOUCK, is the undersheriff of Ingham County who is responsible for controlling and overseeing the Jail of Ingham County as well as its deputies and jail staff and is being is being sued in his official capacity.

73.    Defendant MAJOR SAM L. DAVIS, is the Jail Administrator of Ingham County who is responsible for controlling and overseeing the Jail of Ingham County as well as its deputies and jail staff and is being is being sued in his official capacity.

## FACTUAL STATEMENT

74.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

75.    On August 11, 2015, JESSICA SPALDING was a 24 year old woman detained at the Eaton County Jail.

76.    Upon information and belief, Officer Defendant DOUG R. SHARP arrested JESSICA SPALDING for an outstanding criminal bench warrant stemming from a third degree misdemeanor.

77.    JESSICA SPALDING was booked at or around 12:16 pm on August 11, 2015 by booking officer Defendant DENNIS GERBER (Badge 19148).

78.    The booking process included the completion of an Eaton County Sherriff Office Booking Admission Form which specifically inquired into the inmate's use and/or withdrawal from drugs.

79.    At all times relevant hereto, the Eaton County Sheriff Office Booking Admission Form with regard to JESSICA SPALDING indicates JESSICA SPALDING was "under the influence of drugs or recently withdrawn from drugs" with a handwritten notation of "heroin 0800."

80.    At all times relevant hereto, it was known to Defendants DOUG R. SHARP, DENNIS GERBER, and CARRIE HUNT, as well as other named Eaton County Defendants, that JESSICA SPALDING had used heroin at 8am that same morning and was withdrawing from heroin use.

81.    At all times relevant hereto, Defendant CARRIE HUNT (Badge 19194) searched JESSICA SPALDING prior to placement into her cell.

82.    At all times relevant hereto, the Eaton County Sheriff's Department Booking Report indicates JESSICA SPALDING was to be under medium security.

83.    At all times relevant hereto, Eaton County Jail Policies and Procedures with respect to Intoxication and Withdrawal indicate:

"Policy: Inmates admitted under the influence of addicting drugs are to be segregated observed to insure safety.
…
Procedure:
1.  Inmates who are admitted under the influence of alcohol or other addicting drugs, *shall* be placed in segregation for observation.
2.  The inmate observation log, *shall* be used to document behavior and activity by correction officers.
3.  Inmates exhibiting any questionable behavior (ex. hallucinations, disorientation, seizures, elevated B/P, racing pulse, threat to self or others or unresponsiveness) *shall* be referred immediately to the Health Authority and/or taken to Hayes Green Beach Hospital Emergency Room.
4.  Jail nurse will evaluate symptoms and refer to physician if necessary.
5.  Physician shall determine the course of action. *Detoxification is done only under medical supervision.*"
(emphasis added)

84.    Upon information and belief, JESSICA SPALDING was placed into a holding cell within the Eaton County Jail and not placed in segregation for observation.

85.    Upon information and belief, an inmate observation log was not used by corrections officers to document the behavior and activity of JESSICA SPALDING.

86.    Upon information and belief, JESSICA SPALDING was exhibiting "questionable behavior" as defined by Eaton County Jail Policies and Procedures however she was not referred to the Health Authority or taken to the Hayes Green Beach Hospital Emergency Room.

87.    Upon information and belief, Jessica Spalding presented to the Eaton County Jail with the attributes of an intravenous heroin user as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and all other Eaton County Defendants, were deliberately indifferent toward such emergency medical and did not seek or provide necessary medical attention to JESSICA SPALDING.

88.    Upon information and belief, as evidenced by the above described symptoms, JESSICA SPALDING presented to Eaton County Jail in the throes of heroin withdrawal, had a high fever, and an infected swollen left hand from intravenous heroin use.

89.    Upon information and belief, over the time period of JESSICA SPALDING's detention at the Eaton County Jail her health rapidly deteriorated and at all times relevant hereto was experiencing an emergency medical episode.

90.    At all times relevant hereto, Defendant CARRIE HUNT, Defendant DOUG R. SHARP, Defendant DENNIS GERBER, and all other Eaton County Defendants, observed and became aware of JESSICA SPALDING's continuing medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which each was deliberately indifferent toward such emergency medical and did not seek or provide necessary medical attention to JESSICA SPALDING.

91.    At all times relevant hereto, JESSICA SPALDING was experiencing an emergency medical episode of which Defendant CARRIE HUNT, Defendant DOUG R.

SHARP, and Defendant DENNIS GERBER, were aware and were deliberately indifferent toward JESSICA SPALDING's medical emergency.

92.    Upon information and belief, JESSICA SPALDING was not evaluated by the jail nurse or referred to a physician.

93.    Upon information and belief, JESSICA SPALDING's heroin detoxification was not done under medical supervision.

94.    On August 12, 2015, at or about 1:23 p.m., JESSICA SPALDING posted bond and was transferred to the Lansing City Jail for the purposes of arraignment for an unrelated outstanding criminal bench warrant stemming from a second degree misdemeanor retail fraud incident.

95.    At all times relevant hereto, Defendant DON HAGA processed JESSICA SPALDING's release at which time Defendant DON HAGA observed and became aware of JESSICA SPALDING's continuing medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which Defendant DON HAGA was deliberately indifferent toward such emergency medical condition and released JESSICA SPALDING to the custody of the Lansing Police Department as opposed to seeking necessary medical attention.

96.    At all times relevant hereto, Defendant PETER SCACCIA transported JESSICA SPALDING to the Lansing City Jail at which time he observed and became aware of JESSICA SPALDING's continuing medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which he was deliberately indifferent toward

such emergency medical condition and transported JESSICA SPALDING to the Lansing City Jail as opposed to seeking necessary medical attention.

97.     Defendant PETER SCACCIA escorted JESSICA SPALDING into the Lansing City Jail and alerted Defendant MELISSA OUDERKIRK of JESSICA SPALDING's emergency medical condition, and then left.

98.     JESSICA SPALDING presented to Lansing City Jail for booking at or about 3:34 p.m.

99.     Booking officer, Defendant MELISSA OUDERKIRK of the Lansing Police Department completed the Initial Screening Form for JESSICA SPALDING.

100.     The Initial Screening Form indicates JESSICA SPALDING "uses about a gram of heroin daily" and that JESSICA SPALDING is currently suffering from an "injury from shooting heroin" in left hand.

101.     At or about 3:35 p.m., Arresting Officer Defendant PETER SCACCIA informed Defendant MELISSA OUDERKIRK: "She said her hand is hurting her. She shot heroin in it two days ago and is causing her a high fever."

102.     At all times relevant hereto, JESSICA SPALDING informed Booking Officer Defendant MELISSA OUDERKIRK "I'm a heroin user. And I shot heroin into this hand…I shot heroin like two days ago and it's been like that for two days. It's causing me a really high temperature, it's causing me to run a really high fever."

103.     At all times relevant hereto, JESSICA SPALDING presented her left hand to Defendant MELISSA OUDERKIRK to show that her left hand was swollen.





104.    At all times relevant hereto, JESSICA SPALDING was searched by Defendant JAMERIA CALDWELL.

105.    At all times relevant hereto, JESSICA SPALDING informed JAMERIA CALDWELL at or about 3:43 p.m. of her hand injury. JESSICA SPALDING again informed JAMERIA CALDWELL that her temperature at Eaton County Jail was in excess of 100 degrees.

106.    At or around 3:41 p.m., JESSICA SPALDING and Defendant JAMERIA CALDWELL discussed the injury to JESSICA SPALDING's hand:

> **Officer Jameria Caldwell**: Does that hand hurt?
> **Jessica Spalding**: Yeah, real bad.
> **…**
> **Jessica Spalding**: I just want to go to the hospital and get it checked.
> **…**
> **Officer Jameria Caldwell**: Do you think ice would help with your hand?

**Jessica Spalding**: They gave me ice at Eaton County.
**Officer Jameria Caldwell**: And that didn't help?
**Jessica Spalding**: No, they checked my temperature out there and they said it was 101.

107.    At all times relevant hereto, Lansing Police Department Standard

Operational Procedures titled "Detainee Medical Evaluation/Treatment" indicates:

> "Policy: It is the policy of the Lansing Police Department to provide access to medical services, health care services, and transportation to a hospital for an injured and/or ill prisoner.
>
> Supervisor Responsibilities: Detention Section supervisors shall ensure that any detainee in need of medical treatment receives appropriate medical treatment and is transported, if necessary, to a hospital.
> Definitions:
> …
> > D.  Basic Medical Attention Situation: occurs when a detainee becomes or indicates that he/she is ill or injured. This individual may be transported to the hospital via a patrol car, if authorized by LFD EMS personnel conducting a medical assessment or by a Detention supervisor/designee.
>
> Prisoner Medical Evaluation Responsibilities:
> > A.  Trained Detention Section personnel are responsible for initial assessment of the detainee to differentiate the edical needs of the detainee (i.e. life threatening or LFD medical assessment). Detention Section responsibilities include:
> > > 1.  Life Threatening/Trauma Emergency – Immediately contact the Communications Center to request an ambulance. Advise the nature of the problem, relay available vital signs, advise of any treatment provided, and notify Detention Section supervisor of the Situation.
> > > 2.  Basic Medical Attention – Immediately contact the Communications Center to request an LFD ambulance for medical assessment. Advise the nature of the problem and notify the Detention Section supervisor of the situation.
> > …
> > C.  The following signs and symptoms will require an ambulance be requested:
> > > …
> > > 11.  Any uncontrollable shivers or excessive body temperature/warmth.

15. Any unusual behavior due to diabetes, suicidal overdose, street drug ingestion or intoxication, or alcohol intoxication with other drugs."

108. At the time of booking at Lansing City Jail and during her search, JESSICA SPALDING specified she was injured, was suffering from a fever, was in the throes of a heroin withdrawal, and that she needed to go to the hospital. However, Defendants MELISSA OUDERKIRK, and JAMERIA CALDWELL, denied JESSICA SPALDING medical treatment and turned a blind eye to her readily apparent emergency medical condition by placing her into a general population cell without seeking medical attention.

109. At or around 3:47 p.m., JESSICA SPALDING was placed into Cell 2 at the Lansing City Jail which at all times relevant hereto was subject to the audio/visual monitoring system with which the Lansing City Jail was equipped.

110. At all times relevant hereto, Lansing City Jail was equipped with an audio/visual monitoring system and at all times relevant hereto JESSICA SPALDING was within view of the audio/visual monitoring system.

111. At all times relevant hereto, JESSICA SPALDING was experiencing an ongoing emergency medical episode and required immediate medical assistance.

112. At all times relevant hereto, JESSICA SPALDING vomited and/or expelled diarrhea in extreme frequency coupled with readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms evident of a medical emergency.

113. At all times relevant hereto, JESSICA SPALDING vomited and/or expelled diarrhea during the night of August 12, 2015 into the morning of August 13,

2015 including but limited to the times of: 9:08 p.m., 10:19 p.m., 1:38 a.m., 1:58 a.m.,

2:31 a.m., 2:50 a.m., 2:53 a.m., 3:11 a.m., 3:30 a.m., 4:01 a.m., 4:05 a.m., 5:06 a.m., 5:23

a.m., 5:49 a.m., 6:04 a.m., 6:57 a.m., 7:01 a.m., 7:26 a.m., 7:40 a.m., 7:51 a.m., 8:34 a.m.,

8:43 a.m., 8:56 a.m., 9:26 a.m., 9:42 a.m., 10:14 a.m.











114.    At all relevant times hereto, Defendant OUDERKIRK and Defendant CALDWELL were duty-bound to monitor the audio visual equipment to ensure the safety and welfare of detainees which Defendant OUDERKIRK and Defendant CALDWELL improperly, unlawfully, and otherwise failed to do, and thereby acted with deliberate indifference toward JESSICA SPALDING's known ongoing medical emergency.

115.    At all relevant times hereto, Defendants, OFFICER RODNEY ANDERSON, OFFICER ELIZABETH BARNHILL, OFFICER ALAN BERISH, OFFICER JASON DAVIS, OFFICER ROBERT DAVIS, OFFICER JACOB GRANT, OFFICER RAYMONE GUDE, OFFICER LANA HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER BRIAN KELLEY, OFFICER REBECCA KOPF, OFFICER

PATRICIA LAYNE, OFFICER KURT MARTENS, OFFICER LORRIE RIDENOUR, OFFICER GREGG ROSENBERY, OFFICER DAMON SHERRILL, OFFICER CHARLES WRIGHT, SERGEANT KATHERINE DIEHL, SERGEANT CHARLES FUNK, SERGEANT GUY PACE, and SERGEANT RYAN WILCOX were scheduled for the second shift at the Lansing City Jail and were present during the night of August 12, 2015 into the morning of August 13, 2015. The aforementioned Defendants were duty-bound to monitor Plaintiff personally and via the audio visual equipment to ensure the safety and welfare of detainees, which they failed to do, and thereby acted with deliberate indifference toward JESSICA SPALDING's known ongoing medical emergency.

116.    Upon information and belief, over the time period of JESSICA SPALDING's detention at the Lansing City Jail her health rapidly deteriorated and at all times relevant hereto was experiencing an ongoing emergency medical episode.

117.    At all times relevant hereto, Defendant OUDERKIRK and Defendant CALDWELL observed and were aware of JESSICA SPALDING's continuing medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which each was deliberately indifferent toward such emergency medical and did not seek or provide necessary medical attention to JESSICA SPALDING.

118.    At all times relevant hereto, JESSICA SPALDING was experiencing an ongoing emergency medical episode of which Defendant OUDERKIRK and Defendant CALDWELL were aware and were deliberately indifferent toward JESSICA SPALDING's ongoing emergency medical episode.

119.    At all relevant times hereto, Defendants, OFFICER RODNEY ANDERSON, OFFICER ELIZABETH BARNHILL, OFFICER ALAN BERISH, OFFICER JASON DAVIS, OFFICER ROBERT DAVIS, OFFICER JACOB GRANT, OFFICER RAYMONE GUDE, OFFICER LANA HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER BRIAN KELLEY, OFFICER REBECCA KOPF, OFFICER PATRICIA LAYNE, OFFICER KURT MARTENS, OFFICER LORRIE RIDENOUR, OFFICER GREGG ROSENBERY, OFFICER DAMON SHERRILL, OFFICER CHARLES WRIGHT, SERGEANT KATHERINE DIEHL, SERGEANT CHARLES FUNK, SERGEANT GUY PACE, and SERGEANT RYAN WILCOX were aware, deliberately indifferent, and failed to intervene concerning JESSICA SPALDING's ongoing medical emergency.

120.    At or about 4:28 p.m. on August 13, 2015, JESSICA SPALDING was transported from the Lansing City Jail to the Ingham County Jail.

121.    At all times relevant hereto, Ingham County Jail was provided with the Initial Screening Form executed by the Lansing City Jail which indicated JESSICA SPALDING suffered injury from shooting heroin into her hand and/or was otherwise made aware of JESSICA SPALDING's ongoing medical emergency.

122.    At all times relevant hereto, JESSICA SPALDING presented to Ingham County Jail within the throes of an ongoing readily apparent medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms in conjunction with a high temperature, physical injury, and swollen left hand.

123.    Upon information and belief, at the time of her arrival at the Ingham County Jail JESSICA SPALDING was placed in a receiving cell for several hours and was otherwise disregarded until she was booked at or about 9:11 p.m.

124.    At or about 9:11 p.m., JESSICA SPALDING was placed into general housing at the Ingham County Jail without receiving any medical attention for her known ongoing medical emergency.

125.    At or about 10:50 p.m., JESSICA SPALDING was escorted by Defendant SMITH to Cell D9 in Post 5 in the top bunk within the Ingham County Jail at which time he observed and became aware of JESSICA SPALDING's continuing medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which he was deliberately indifferent toward such emergency medical condition and placed her into a cell as opposed to seeking necessary medical attention.

126.    On August 13, 2015, from approximately 6:45 p.m. through 7:00 a.m. on August 14, 2015, Defendant SALAZAR, was assigned to Post #5, where JESSICA SPALDING was housed.

127.    At all times relevant hereto, JESSICA SPALDING spoke to Defendant SALAZAR on August 13, 2015 and informed her "I don't mean to be gross, but I've been shitting myself all day." Defendant SALAZAR observed JESSICA SPALDING's swollen hand and JESSICA SPALDING indicated she had been shooting up heroin incorrectly.

128.    At or about 1:03 a.m.,   the Medical Questionnaire, was taken by Defendant KENNETH TYLER, at Ingham County Jail which indicates:

…

**19. Do you use drugs? (What type of Drug(s) do you use, mode of use, amount used, how often do you use drugs, date or time you last used drugs)?** Yes. Heroin/Shoots it up/1 gram per day/Four days ago.

**20. If "yes" resonse to question 19, do you have any problems when you stop using? (IE. Withdrawals, convulsions, sweats) (Explain)?** Yes. Gets really sick.

…

**63.  Do you have a history of using drugs and/or alcohol? (Does this person appear to be under the influence of a substance?)** Yes. Heroin.

…

**69. Do you feel like you talk or move more slowly than you normally do?** Yes.

**70. Have you recently had feelings of uselessness?** Yes.

…

**77.  General  population  with  prompt  referral  to  appropriate healthcare service?** Yes.

129.    At  all  times  relevant  hereto,  JESSICA  SPALDING  was  observed  at medical by Defendant KENNETH TYLER at approximately 1:03 a.m..

130.    Defendant KENNETH TYLER indicated "needle marks" were a condition that required immediate attention.

131.    Upon information and belief, Defendant KENNETH TYLER observed the readily apparent serious physical injury to JESSICA SPALDING's left arm.

132.    Defendant  KENNETH  TYLER  observed  JESSICA  SPALDING  was tachycardic.

133.    Defendant  KENNETH  TYLER  indicated  JESSICA  SPALDING  was withdrawing from heroin.

134.    Defendant KENNETH TYLER placed JESSICA SPALDING on the Ingham County Clinical Opiate Withdrawal monitoring protocol and sent her back to her cell.

135.    Defendant KENNETH TYLER was deliberately indifferent to the readily apparent ongoing medical emergency and provided no medical treatment to JESSICA SPALDING.

136.    At all times relevant hereto, JESSICA SPALDING was constantly vomiting and experiencing diarrhea through the night of August 13, 2015 and into the morning of August 14, 2015.

137.    Upon information and belief, Defendant SALAZAR conducted cell checks in Post 5 at 1:20 a.m., 2:11 a.m., 3:05 a.m., 4:00 a.m., 4:55 a.m., 5;32 a.m., and 6:40 a.m., at such points Defendant SALAZAR was continually made aware and continually turned a blind eye and was deliberately indifferent toward the readily apparent emergency medical episode suffered by JESSICA SPALDING.

138.    In the morning of August 14, 2015, JESSICA SPALDING went to breakfast and asked Defendant SALAZAR to return to her cell because she was feeling ill at which time Defendant SALAZAR escorted JESSICA SPALDING back to her cell.

139.    On August 14, 2015, from approximately 6:45 a.m. through 7:00 p.m. Defendant HAWKINS and Defendant STEWART were assigned to Post #5, where JESSICA SPALDING was housed.

140.    At or about 6:45 a.m., Defendant SALAZAR debriefed with oncoming officers Defendant HAWKINS, Defendant STEWART and Defendant SERGEANT MELISSA BROWN.

141.    Upon information and belief, Defendant MELISSA BROWN was aware of JESSICA SPALDING's continuing medical emergency as demonstrated by her readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms, for which MELISSA BROWN was deliberately indifferent toward such emergency medical and did not seek or provide necessary medical attention to JESSICA SPALDING.

142.    On the morning of August 14, 2015, JESSICA SPALDING was vomiting and constantly experiencing fecal incontinence.

143.    JESSICA SPALDING's cell-mate notified Defendant HAWKINS of JESSICA SPALDING's continuing ongoing medical emergency.

144.    At all times relevant hereto, JESSICA SPALDING's cell mate complained multiple times to the officers on duty, specifically Defendant HAWKINS, regarding JESSICA SPALDING's severe medical condition and the vile smell of the cell due to JESSICA SPALDING's constant vomiting and defecation.

145.    At all times relevant hereto, Defendant HAWKINS instructed JESSICA SPALDING's cellmate to move JESSICA SPALDING's mattress to the floor near the toilet so that she would vomit and defecate less on the floor.

146.    At all times relevant hereto, JESSICA SPALDING would collapse and/or lose consciousness while housed at Ingham County Jail.

147.    At all times relevant hereto, JESSICA SPALDING was unable to walk and therefore did not attend lunch. Defendant HAWKINS was aware of her absence and instructed other inmates to deliver JESSICA SPALDING's liquid lunch, to her cell. JESSICA SPALDING did not eat.



148.    At or about 1 p.m. on August 14, 2015, JESSICA SPALDING again experienced fecal incontinence and defecated on herself. Defendant HAWKINS was made aware of this medical episode.

149.    On August 14, 2015 at or around 2:26 p.m. JESSICA SPALDING was placed in a wheelchair by Defendant HAWKINS at which time Defendant HAWKINS observed large bruises on JESSICA SPALDING's lower back.

150.    Defendant HAWKINS transferred JESSICA SPALDING to Defendant JEFFREY CHAPPELL for transportation to the medical post.

151.    Defendant JEFFREY CHAPPELL advised Defendant BORSETH that JESSICA SPALDING was continually vomiting and defecating herself. Defendant BORSETH took JESSICA SPALDING's vitals at 2:46 p.m. however did not check JESSICA SPALDING's temperature.

152.    JESSICA SPALDING was seen at medical by Defendant PATRICK CRANE and/or Defendant CAROL HILL.

153.    Defendant PATRICK CRANE and/or Defendant CAROL HILL observed JESSICA SPALDING to be nauseated, had chills, and was experiencing vomiting, and diarrhea and indicated JESSICA SPALDING is "feeling worse."

154.     Defendant PATRICK CRANE and/or Defendant CAROL HILL observed JESSICA SPALDING to have accelerated respirations and rapid heart rate, irritable, and experiencing malaise.

155.     Defendant PATRICK CRANE and/or Defendant CAROL HILL observed JESSICA SPALDING and describe her as "extremely shaky and weak" and suffering joint and muscle pain.

156.     Defendant PATRICK CRANE and/or Defendant CAROL HILL observed that JESSICA SPALDING was thin and ill appearing, tachycardic, agitated, anxious, and fearful.

157.     Defendant PATRICK CRANE and/or Defendant CAROL HILL observed JESSICA SPALDING was unable to sit still in the wheelchair.

158.     Defendant PATRICK CRANE and/or Defendant CAROL HILL were deliberately indifferent to the readily apparent ongoing medical emergency and provided no medical treatment to JESSICA SPALDING.

159.     JESSICA SPALDING was discharged from medical to her cell with instructions to the jail staff "will have nurse recheck Pt. this evening" but to "return to clinic sooner if worse."

160.     At all times relevant hereto, the Ingham County Jail Medical Policy regarding "Opiate Withdrawal" indicates:

> "Policy: It shall be the policy of the Ingham County jail Medical (JM) to provide a systematic assessment to evaluate and treat opiate withdrawal using a safe and effective detoxification protocol.
> Definitions: 'Clinical Opiate Withdrawal Scale' (COWS): A pen and paper tool that rates eleven common opiate withdrawal signs or symptoms. The summed score of the eleven items can be used to assess a patient's level of withdrawal.
> Procedure:

A. All inmates incarcerated at the Ingham County Jail will be screened for opiate use and risk of opiod withdrawal.

…

B. If the intmate's answer is affirmative for the use of opiates, the Jail Nurse – RN on duty will evaluate for substance dependence and withdrawal symptoms using the COWS.

…

E. A COWS assessment will be done every day by the Jail Nurse – RN or Nurse practitioner for five days. Results will be documented on the COWS flow sheet.

| Score > 36 | severe withdrawal | Send to ED |
|---|---|---|
| Score 25-36 | moderately severe | |
| Score 13-24 | moderate | |
| Score 5-12 | mild" | |

161.    At all times relevant hereto, INGHAM COUNTY requires strict compliance with the Opiate Withdrawal protocol and JESSICA SPALDING was denied medical treatment because she did not meet the "severe withdrawal" scoring on the Ingham County Jail's Opiate Withdrawal Protocol warranting transfer to the Emergency Department.

162.    At all times relevant hereto, JESSICA SPALDING was wheeled back to her cell where Defendant HAWKINS observed JESSICA SPALDING to be "just as weak as when she left" and Defendant HAWKINS was unaware of any treatment medical staff provided.

163.    At all times relevant hereto, JESSICA SPALDING did not leave her cell for dinner and Defendant HAWKINS again instructed other cellmates to deliver her liquid food to her cell.

164.    At approximately 5:45 p.m., Defendant HAWKINS conducted a cell check where she observed JESSICA SPALDING laying on the floor of her cell surrounded by the uneaten containers of food which were delivered to her by jail-mates throughout the day.

165.    After observing this, Defendant HAWKINS, knowing JESSICA SPALDING was in "very bad shape", advised JESSICA SPALDING to consume the liquid food in order to regain strength.

166.    Defendant HAWKINS, knowing JESSICA SPALDING was in "very bad shape", remained deliberately indifferent to JESSICA SPALDING's readily apparent medical emergency and simply continued on with her cell checks instead of providing JESSICA SPALDING the necessary medical attention she desperately needed.

167.    Upon information and belief, Defendant HAWKINS and/or Defendant STEWART conducted cell checks in Post 5 at 7:30 a.m., 8:29 a.m., 9:20 a.m., 10:04 a.m., 10:56 a.m., 11:55 a.m., 12:35 p.m., 1:20 p.m., 2:15 p.m., 2:26 p.m., 3:21 p.m., 4:15 p.m, 5:00 p.m., 5:58 p.m., and 6:35 p.m., at such points Defendant HAWKINS and/or Defendant STEWART was continually made aware and continually turned a blind eye and was continually deliberately indifferent toward the readily apparent emergency medical episode suffered by JESSICA SPALDING.

168.    On August 14, 2015, from approximately 6:45 p.m. through 7:00 a.m. Defendant SALAZAR was assigned to Post #5 where JESSICA SPALDING was housed.

169.    At or about 6:45 p.m.., Defendant HAWKINS debriefed with the oncoming officer Defendant SALAZAR.

170.    At or about 7:00 p.m., surrounding inmates indicated strange noises were coming from JESSICA SPALDING's cell.

171.    At or around 7:31 p.m. Defendant SALAZAR called a code blue after discovering JESSICA SPALDING unresponsive and laying face down on her mattress which was still on the floor of her cell with vomit encompassing her face.



172.    At  or  around  7:31  p.m.,  Defendant  PATRICK  stated  to  Defendant
AGUREOS that JESSICA SPALDING was "really blue and really stiff."



173.    At  or  around  7:31  p.m.,  Defendant  PLANTZ,  Defendant  PATRICK,
Defendant  AGUEROS,  Defendant  GHYRA,  Defendant  HAMPTON,  Deputy  Casey
Haapaporo,  Deputy  Taya  Insixiengmay,  Deputy  Tyron  Calkins  and  Deputy  Jason
Buckner,  and  arrived  at  JESSICA  SPALDING's  cell  with  an  Automatic  External
Defibrillator device to the jail cell and CPR was started on JESSICA SPALDING. At all

times relevant hereto, green bodily fluids were coming from JESSICA SPALDING's mouth as chest compressions were being conducted.

174.    At around 7:45 p.m., EMS arrived JESSICA SPALDING and pronounced JESSICA SPALDING's death at approximately 8:25 p.m.

175.    On August 13, 2015, from approximately 6:45 p.m. through 7:00 a.m. on August 14, 2015, Defendant GHYRA, Defendant BRINAH COOK, Defendant RODOLFO GAYTAN, and Defendant WATTS were assigned to Receiving and were required to perform "cell checks/all areas" and camera checks of all areas within the Ingham County jail who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

176.    On August 13, 2015, Defendant Lieutenant PATRICK and Defendant Sergeant AGUEROS were the supervisors in charge of the Ingham County Jail who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

177.    On August 13, 2015, from approximately 6:45 p.m. through 7:00 a.m. on August 14, 2015, Defendant SALAZAR, was assigned to Post #5, where JESSICA SPALDING was housed, who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of

the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

178.     On August 13, 2015, from approximately 6:45 p.m. through 7:00 a.m. on August 14, 2015, Defendant NICHOLAS WAGNER and Defendant TORREZ, were assigned to monitor the cell checks performed by Defendant SALAZAR at Post #5, where JESSICA SPALDING was housed, who improperly, unlawfully, and otherwise failed monitor Defendant SALAZAR to ensure that Defendant SALAZAR checked, observed, and/or monitored the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

179.     On August 14, 2015, from approximately 6:45 a.m. through 7:00 p.m. Defendant HAWKINS and Defendant STEWART, were assigned to Post #5, where JESSICA SPALDING was housed, who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

180.     On August 14, 2015, from approximately 6:45 a.m. through 7:00 p.m. Defendant DARROLL GATSON, was assigned to monitor the cell checks performed by Defendant HAWKINS and Defendant STEWART at Post #5, where JESSICA SPALDING was housed, who improperly, unlawfully, and otherwise failed monitor Defendant HAWKINS and Defendant STEWART to ensure that Defendants checked, observed, and/or monitored the cell(s) occupied by JESSICA SPALDING for indications

of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

181.    On August 14, 2015, Defendant Lieutenant PATRICK and Defendant Sergeant AGUEROS were the supervisors in charge of the Ingham County Jail who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

182.    On August 14, 2015, from approximately 6:45 p.m. through 7:00 a.m. on August 15, 2015, Defendant GHYRA, Defendant RODOLFO GAYTAN, and Defendant WATTS were assigned to Receiving and were required to perform "cell checks/all areas" and camera checks of all areas within the Ingham County jail who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

183.    On August 14, 2015, from approximately 7:00 a.m. through 7:00 p.m. on Defendant CHRIS HAGERMAN, Defendant SANDRA DOUSE, and Defendant MATTHEW WATTERS, were assigned to Receiving and were required to perform "cell checks/all areas" and camera checks of all areas within the Ingham County jail who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or

situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

184.    On August 14, 2015, from approximately 6:45 p.m. through 7:00 a.m. Defendant SALAZAR, was assigned to Post #5, where JESSICA SPALDING was housed, who improperly, unlawfully, and otherwise failed to check, observe, and/or monitor the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

185.    On August 14, 2015, from approximately 6:45 p.m. through 7:00 a.m. on August 15, 2015, Defendant PLANTZ, was assigned to monitor the cell checks performed by Defendant SALAZAR at Post #5, where JESSICA SPALDING was housed, who improperly, unlawfully, and otherwise failed monitor Defendant SALAZAR to ensure that Defendant SALAZAR checked, observed, and/or monitored the cell(s) occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

186.    Prior to the discovery of JESSICA SPALDING at approximately 7:31 p.m. on August 14, 2015, each and every defendant failed to perform a physical check on JESSICA SPALDING and/or failed to intervene concerning the ongoing emergency medical episode suffered by JESSICA SPALDING.

187.    Despite knowledge of JESSICA SPALDING's heroin withdrawal, injury to her hand, and current signs and symptoms, each and every Defendant failed to examine, observe, or provide medical treatment, prior to JESSICA SPALDING's death

contrary to their duties outlined by Eaton County Jail, Lansing City Jail, and Ingham County Jail's Department Policies and the Constitution of the United States.

188.    At all times relevant hereto, each and every Defendant failed to timely and/or appropriately perform physical jail cell checks as is required of them by Eaton County Jail, Lansing City Jail, and Ingham County Jail's Department Policies specifically the failure to check, observe, and/or monitor the cell occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

189.    The Eaton County Jail, Lansing City Jail, and Ingham County Jail are equipped with visual and audio monitoring systems, and all times relevant hereto, JESSICA SPALDING was fully within the view of the video monitoring system.

190.    At all times relevant hereto, each and every Defendant was duty-bound and failed to monitor said equipment to detect events such as medical episodes, which each and every Defendant improperly, unlawfully, and otherwise failed to do, and therefore failed to detect the medical episode experienced by JESSICA SPALDING.

191.    At all times relevant hereto, each and every Defendant was duty-bound and failed to check, observe, and/or monitor the cell occupied by JESSICA SPALDING for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by JESSICA SPALDING.

192.    At all times relevant hereto, each and every Defendant failed to timely and/or appropriately monitor JESSICA SPALDING utilizing the video and audio monitoring equipment as is required of them.

193.    At all times during the incarceration of JESSICA SPALDING at the Eaton County Jail, Lansing City Jail, and Ingham County Jail, JESSICA SPALDING behaved in such a fashion that was highly evident that she was experiencing a medical episode, was rapidly deteriorating, and needed prompt and immediate medical treatment for which each and every Defendant improperly, unlawfully, and otherwise failed to observe contrary to the duties owed to JESSICA SPALDING by way of the Constitution of the United States.

194.    At all times relevant hereto, JESSICA SPALDING'S symptoms were severe and obvious to her cellmates and others within the resident population who observed her, all of whom recognized the necessity of immediate medical attention.

195.    At all times relevant hereto, each and every Defendant knew JESSICA SPALDING was suffering from a serious medical condition requiring immediate medical care and treatment and ignored JESSICA SPALDING amounting to deliberate indifference in violation of JESSICA SPALDING's constitutional rights.

196.    At all times relevant hereto, each and every Defendant knew or should have known of JESSICA SPALDING's delicate state and deteriorating condition.

197.    At all times relevant hereto, each and every Defendant failed to initiate close observation of JESSICA SPALDING, and/or take proper precautions to protect her, and/or take steps to properly and adequately monitor her.

198.    Each and every Defendant improperly, unlawfully, and otherwise ignored JESSICA SPALDING and left her in the holding cell without further monitoring until she was discovered unresponsive at around 7:31 p.m. on August 14, 2015, and/or each and

every Defendant improperly, unlawfully, and otherwise failed to intervene concerning the ongoing emergency medical episode suffered by JESSICA SPALDING.

199.    JESSICA SPALDING's cause of death as determined by the medical examiner was apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

200.    Defendants are not entitled to governmental immunity and/or qualified immunity.

201.    All named Defendants were deliberately indifferent to Plaintiff's serious medical condition which deprived her of her constitutional rights to medical attention.

**COUNT I**
**42 U.S.C. § 1983 DELIBERATE INDIFFERENCE**
**DEFENDANTS DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, DON HAGA**

202.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

203.    As a citizen of the United States and pretrial detainee at the Eaton County Jail located in the State of Michigan, Plaintiff Decedent, SPALDING, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Michigan and of the United States.

204.    Pursuant to the Eight Amendment (through the Fourteenth Amendment) of the United States Constitution, at all times relevant, Plaintiff Decedent, SPALDING, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

205.    At all times relevant, Plaintiff Decedent, SPALDING, had a right to adequate and sufficient medical care and/or treatment such that her life would be

preserved and she at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of her health and well-being.

206.    The actions and omission of acts by Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, demonstrated a reckless disregard to Plaintiff Decedent, SPALDING'S, serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to SPALDING and caused constitutional deprivation of her individual rights including, but not limited to:

    a.   Deliberately ignoring Plaintiff Decedent, SPALDING's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

    b.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent cognitive impairment;

    c.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent emotional symptoms;

    d.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent psychological symptoms;

    e.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent behavioral symptoms;

    f.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent gastrointestinal symptoms;

    g.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent mood symptoms;

    h.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, recent heroin use and/or withdrawal;

    i.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent injury to her left hand;

    j.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent trauma to her left hand;

k.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent infection to her left forearm and hand;

l.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent swelling to her left forearm and hand;

m.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

n.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

o.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

p.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

q.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

r.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

s.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

t.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

u.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

v.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

w.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

x.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

y.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

z.  Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

aa. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

bb. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

cc. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medical attention as required by jail policy for moderate to severe withdrawal syndrome;

dd. Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ee. Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

ff. Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

gg. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

hh. Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

ii.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

jj.  Any and all other breaches as they become known throughout the course of this litigation.

207. The conduct of Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, as described above, deprived Plaintiff Decedent, SPALDING, of her clearly established rights, privileges and immunities in violation of the Eighth Amendment (through the Fourteenth Amendment) of the Constitution of the United States.

208. As a direct and proximate result of the actions and/or omissions Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

209. As a direct and proximate result of the acts and/or omissions of Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

210. The conduct of Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff requests the following relief:

 a) Reasonable medical, hospital, funeral and burial expenses;

 b) Conscious pain and suffering;

 c) Loss of financial support;

d) Loss of service;

e) Loss of gifts or other valuable gratuities;

f) Loss of comfort, society and companionship;

g) Compensatory and punitive damages;

h) Reasonable attorney fees, costs and interest; and

i) Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

**COUNT II**
**42 U.S.C. § 1983 DELIBERATE INDIFFERENCE**
**DEFENDANT PETER SCACCIA ONLY**

211.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

212.    As a citizen of the United States and pretrial detainee in the care, custody, and control of the Lansing Police Department located in the State of Michigan, Plaintiff Decedent, SPALDING, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Michigan and of the United States.

213.    Pursuant to the Eight Amendment (through the Fourteenth Amendment) of the United States Constitution, at all times relevant,  Plaintiff Decedent, SPALDING, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

214.    At all times relevant,  Plaintiff Decedent, SPALDING, had a right to adequate and sufficient medical care and/or treatment such that her life would be

preserved and she at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of her health and well-being.

215.    The actions and omission of acts by Defendant PETER SCACCIA demonstrated a reckless disregard to Plaintiff Decedent, SPALDING'S, serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to SPALDING and caused constitutional deprivation of her individual rights including, but not limited to:

   a.   Deliberately ignoring Plaintiff Decedent, SPALDING's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

   b.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent cognitive impairment;

   c.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent emotional symptoms;

   d.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent psychological symptoms;

   e.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent behavioral symptoms;

   f.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent gastrointestinal symptoms;

   g.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent mood symptoms;

   h.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, recent heroin use and/or withdrawal;

   i.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent injury to her left hand;

   j.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent trauma to her left hand;

k.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent infection to her left forearm and hand;

l.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent swelling to her left forearm and hand;

m.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

n.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

o.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

p.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

q.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

r.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

s.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

t.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

u.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

v.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

w.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, after being made aware she was in substantial physical pain as a result of the trauma to her left hand;

x.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

y.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

z.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

aa. Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

bb. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

cc. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

dd. Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ee. Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

ff. Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

gg. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

hh. Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

ii.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

jj.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING consistent with Lansing Police Department Policy;

kk. Failed to act in a reasonable manner;

ll. Any and all other breaches as they become known throughout the course of this litigation.

216.    The conduct of Defendant PETER SCACCIA as described above, and deprived Plaintiff Decedent, SPALDING, of her clearly established rights, privileges and immunities in violation of the Eighth Amendment (through the Fourteenth Amendment) of the Constitution of the United States.

217.    As a direct and proximate result of the actions and/or omissions PETER SCACCIA  Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

218.    As a direct and proximate result of the acts and/or omissions of Defendant PETER SCACCIA, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

219.    The conduct of Defendant PETER SCACCIA, was and remains extreme and outrageous subjecting Defendant to punitive damages.

**WHEREFORE**, Plaintiff requests the following relief:

a)  Reasonable medical, hospital, funeral and burial expenses;

b)  Conscious pain and suffering;

c)  Loss of financial support;

d)  Loss of service;

e)  Loss of gifts or other valuable gratuities;

f)  Loss of comfort, society and companionship;

g)  Compensatory and punitive damages;

h)  Reasonable attorney fees, costs and interest; and

i)  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

<u>**COUNT III**</u>
<u>**42 U.S.C. § 1983 DELIBERATE INDIFFERENCE**</u>
<u>**DEFENDANTS MELISSA OUDERKIRK, JAMERIA CALDWELL, OFFICER ELIZABETH BARNHILL, OFFICER ALAN BERISH, OFFICER JASON DAVIS, OFFICER ROBERT DAVIS, OFFICER JACOB GRANT, OFFICER RAYMONE GUDE, OFFICER LANA HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER BRIAN KELLEY, OFFICER REBECCA KOPF, OFFICER PATRICIA LAYNE, OFFICER KURT MARTENS, OFFICER LORRIE RIDENOUR, OFFICER GREGG ROSENBERY, OFFICER DAMON SHERRILL, OFFICER CHARLES WRIGHT, SERGEANT RODNEY ANDERSON, SERGEANT KATHERINE DIEHL, SERGEANT CHARLES FUNK, SERGEANT GUY PACE, SERGEANT RYAN WILCOX, ONLY**</u>

220.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

221.    As a citizen of the United States and pretrial detainee at the Lansing City Jail located in the State of Michigan, Plaintiff Decedent, SPALDING, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Michigan and of the United States.

222.    Pursuant to the Eight Amendment (through the Fourteenth Amendment) of the United States Constitution, at all times relevant,  Plaintiff Decedent, SPALDING, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

223.    At all times relevant,  Plaintiff Decedent, SPALDING, had a right to adequate and sufficient medical care and/or treatment such that her life would be preserved and she at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of her health and well-being.

224.    The actions and omission of acts by Defendants MELISSA OUDERKIRK, JAMERIA CALDWELL, and the Second Shift Staff, OFFICER RODNEY ANDERSON, OFFICER ELIZABETH BARNHILL, OFFICER ALAN BERISH, OFFICER JASON DAVIS, OFFICER ROBERT DAVIS, OFFICER JACOB GRANT, OFFICER RAYMONE GUDE, OFFICER LANA HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER BRIAN KELLEY, OFFICER REBECCA KOPF, OFFICER PATRICIA LAYNE, OFFICER KURT MARTENS, OFFICER LORRIE RIDENOUR, OFFICER GREGG ROSENBERY, OFFICER DAMON SHERRILL, OFFICER CHARLES WRIGHT, SERGEANT KATHERINE DIEHL, SERGEANT CHARLES FUNK, SERGEANT GUY PACE, and SERGEANT RYAN WILCOX [hereinafter, collectively referred to as "LANSING CITY JAIL SECOND SHIFT STAFF"] demonstrated a reckless disregard to Plaintiff Decedent, SPALDING's, serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to SPALDING and caused constitutional deprivation of her individual rights including, but not limited to:

   a.    Deliberately ignoring Plaintiff Decedent,  Spalding's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

b.      Deliberately  ignoring  Plaintiff  Decedent,  Spalding's,
known serious medical needs and failing to obtain medical
attention within a reasonable time frame;

c.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent cognitive impairment;

d.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent emotional symptoms;

e.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent psychological symptoms;

f.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent behavioral symptoms;

g.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent gastrointestinal symptoms;

h.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent mood symptoms;

i.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, recent heroin use and/or withdrawal;

j.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent injury to her left hand;

k.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent trauma to her left hand;

l.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent infection to her left forearm
and hand;

m.      Failure to obtain medical attention for Plaintiff Decedent,
SPALDING's, readily apparent swelling to her left forearm
and hand;

n.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

o.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

p.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

q.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

r.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

s.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

t.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

u.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

v.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

w.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

x.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING, after being made aware she was in substantial physical pain as a result of the trauma to her left hand;

y.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

z.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

aa.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

bb.    Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

cc.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

dd.    Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

ee.    Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ff.    Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

gg.    Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

hh.    Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

ii.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

jj.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

kk.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING consistent with Lansing Police Department Policy;

ll.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING after SPALDING informed Defendants that she needed to go to the hospital for treatment for the trauma sustained to her left hand;

mm.    Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medical attention as required by jail policy for moderate to severe withdrawal syndrome;

nn.    Any and all other breaches as they become known throughout the course of this litigation.

225.    The conduct of Defendants MELISSA OUDERKIRK, JAMERIA CALDWELL, and the LANSING CITY JAIL SECOND SHIFT STAFF as described above, deprived Plaintiff Decedent, SPALDING, of her clearly established rights, privileges and immunities in violation of the Eighth Amendment (through the Fourteenth Amendment) of the Constitution of the United States.

226.    As a direct and proximate result of the actions and/or omissions of Defendants MELISSA OUDERKIRK, JAMERIA CALDWELL, and the LANSING CITY JAIL SECOND SHIFT STAFF, Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

227.    As a direct and proximate result of the acts and/or omissions of Defendants MELISSA OUDERKIRK, JAMERIA CALDWELL, and the LANSING CITY JAIL SECOND SHIFT STAFF, Plaintiff has sustained and is entitled to

compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

228.    The conduct of Defendants MELISSA OUDERKIRK, JAMERIA CALDWELL, and the LANSING CITY JAIL SECOND SHIFT STAFF was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff requests the following relief:

    a)  Reasonable medical, hospital, funeral and burial expenses;

    b)  Conscious pain and suffering;

    c)  Loss of financial support;

    d)  Loss of service;

    e)  Loss of gifts or other valuable gratuities;

    f)  Loss of comfort, society and companionship;

    g)  Compensatory and punitive damages;

    h)  Reasonable attorney fees, costs and interest; and

    i)  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

**COUNT IV**
**42 U.S.C. § 1983 DELIBERATE INDIFFERENCE**
**DEPUTY JEFFREY CHAPPELL, PATRICK CRANE DNP, RN,**
**CAROL HILL FNP,  KENNETH TYLER RN,  JENNIFER HAMPTON RN,**
**JONELLE BORSETH RN, DEPUTY CHARMAINE HAWKINS,**
**LIEUTENANT DANIELLE PATRICK, DEPUTY CHELSEA STEWART,**
**DEPUTY HEATHER SALAZAR, DEPUTY NICHOLAS WAGNER,**
**DEPUTY TORREZ, DEPUTY MORGAN GHYRA, DEPUTY BRINAH**
**COOK, DEPUTY CONNER PLANTZ, DEPUTY RODOLFO GAYTAN,**
**DEPUTY RYAN WATTS, DEPUTY DARROLL GATSON, SERGEANT**
**THOMAS AGUEROS, DEPUTY CHRIS HAGERMAN, DEPUTY**

**SANDRA DOUSE, DEPUTY MATTHEW WATTERS, DEPUTY NATHAN
SMITH, SERGEANT MELISSA BROWN, ONLY**

229.    Plaintiff hereby reincorporates and restates each and every allegation
contained in the preceding paragraphs of this Complaint as if set forth herein.

230.    As a citizen of the United States and pretrial detainee at the Ingham
County Jail located in the State of Michigan, Plaintiff Decedent, SPALDING, was
entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of
the State of Michigan and of the United States.

231.    Pursuant to the Eight Amendment (through the Fourteenth Amendment) of
the United States Constitution, at all times relevant,  Plaintiff Decedent, SPALDING,
had a right to be free from cruel and unusual punishment while a pretrial detainee under
the custody and control of Defendants.

232.    At all times relevant,  Plaintiff Decedent, SPALDING, had a right to
adequate and sufficient medical care and/or treatment such that her life would be
preserved and she at all times would be free from needless unjustified and preventable
pain, suffering, and deterioration of her health and well-being.

233.    The actions and omission of acts by Defendants DEPUTY JEFFREY
CHAPPELL, PATRICK CRANE DNP, RN, CAROL HILL FNP,  KENNETH TYLER
RN,  JENNIFER HAMPTON RN, JONELLE BORSETH RN, DEPUTY CHARMAINE
HAWKINS, LIEUTENANT DANIELLE PATRICK, DEPUTY CHELSEA STEWART,
DEPUTY  HEATHER  SALAZAR,  DEPUTY  NICHOLAS  WAGNER,  DEPUTY
TORREZ,  DEPUTY  MORGAN  GHYRA,  DEPUTY  BRINAH  COOK,  DEPUTY
CONNER  PLANTZ,  DEPUTY  RODOLFO  GAYTAN,  DEPUTY  RYAN  WATTS,
DEPUTY  DARROLL  GATSON,  SERGEANT  THOMAS  AGUEROS,  DEPUTY

CHRIS HAGERMAN, DEPUTY SANDRA DOUSE, DEPUTY MATTHEW

WATTERS, DEPUTY NATHAN SMITH, SERGEANT MELISSA BROWN,

[hereinafter collectively referred to as "INGHAM COUNTY INDIVIDUAL

DEFENDANTS"] demonstrated a reckless disregard to Plaintiff Decedent,

SPALDING'S, serious medical needs that were so obvious that even a layperson would

easily recognize the necessity for medical attention, which posed an obvious risk of

substantial harm to SPALDING and caused constitutional deprivation of her individual

rights including, but not limited to:

    a.    Deliberately ignoring Plaintiff Decedent, Spalding's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

    b.    Deliberately ignoring Plaintiff Decedent, Spalding's, known serious medical needs and failing to obtain medical attention within a reasonable time frame;

    c.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent cognitive impairment;

    d.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent emotional symptoms;

    e.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent psychological symptoms;

    f.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent behavioral symptoms;

    g.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent gastrointestinal symptoms;

    h.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent mood symptoms;

i.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, recent heroin use and/or withdrawal;

j.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent injury to her left hand;

k.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent trauma to her left hand;

l.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent infection to her left forearm and hand;

m.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent swelling to her left forearm and hand;

n.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

o.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

p.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

q.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

r.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

s.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

t.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

u.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

v.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

w.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

x.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, after being made aware she was in substantial physical pain as a result of the trauma to her left hand;

y.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

z.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

aa.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

bb.     Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

cc.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

dd.     Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

ee.     Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ff.     Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

gg.     Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

hh.     Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

ii.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

jj.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

kk.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING after SPALDING informed Defendants that she needed to go to the hospital for treatment for the trauma sustained to her left hand;

ll.     Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medical attention as required by jail policy for moderate to severe withdrawal syndrome;

mm.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING'S, seizure like activity;

nn.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING consistent with Ingham County Sheriff's Office Policy;

oo.     Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medication as recommended by jail policy for moderate to severe opiate withdrawal syndrome;

pp.    Failure to obtain and/monitor Plaintiff Decedent, SPALDING, vitals;

qq.    Depriving the Plaintiff Decedent, SPALDING, of a clean, habitable environment;

rr.    Any and all other breaches as they become known throughout the course of this litigation.

234.    The conduct of the INGHAM COUNTY INDIVIDUAL DEFENDANTS as described above, deprived Plaintiff Decedent, SPALDING, of her clearly established rights, privileges and immunities in violation of the Eighth Amendment (through the Fourteenth Amendment) of the Constitution of the United States.

235.    As a direct and proximate result of the actions and/or omissions of INGHAM COUNTY INDIVIDUAL DEFENDANTS Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

236.    As a direct and proximate result of the acts and/or omissions of INGHAM COUNTY INDIVIDUAL DEFENDANTS Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

237.    The conduct of INGHAM COUNTY INDIVIDUAL DEFENDANTS was and remains extreme and outrageous subjecting Defendants to punitive damages.

238.    WHEREFORE, Plaintiff requests the following relief:

a)    Reasonable medical, hospital, funeral and burial expenses;

b)  Conscious pain and suffering;

c)  Loss of financial support;

d)  Loss of service;

e)  Loss of gifts or other valuable gratuities;

f)  Loss of comfort, society and companionship;

g)  Compensatory and punitive damages;

h)  Reasonable attorney fees, costs and interest; and

i)  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

### COUNT V
### 42 U.S.C. § 1983 - FAILURE TO TRAIN/SUPERVISE;
### CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL RIGHTS; INADEQUATE POLICY
### DEFENDANT EATON COUNTY

239.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

240.    The conduct of Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, as described throughout, was performed under the color of law while Defendants were working for and with the authority of Defendant EATON COUNTY.

241.    At all relevant times, Defendant, EATON COUNTY, Sheriff Thomas Reich, Undersheriff Jeffrey Cook and Captain Robert Jordan (collectively "Eaton County Defendants") had a custom, pattern, and/or practice of failing to supervise and/or train Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, and other staff in a reasonable manner to prevent such conduct.

242.    The failure of the EATON COUNTY Defendants (collectively "Eaton County Defendants") to properly supervise and/or train its personnel or otherwise create and enforce a custom policy or procedure, who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such as was caused to Plaintiff.

243.    Defendant EATON COUNTY was aware or should have been aware that Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, and its correction personnel would confront situations as described herein and that a substantial risk of serious harm existed, and was conscious of the risk of harm posed by Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA.

244.    At all times relevant, there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

245.    At all times relevant, the EATON COUNTY Defendants, through its appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs, and the Eaton County Defendants ratified the behavior and conduct of its employees including Defendants Sharp, Gerber, Hunt and Haga.

246.    At all times relevant, Defendant, EATON COUNTY was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical

attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

247.    Upon all information and belief Defendant, EATON COUNTY and its policy makers acquiesced in the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

248.    Upon all information and belief, it was the custom or practice of Defendant, EATON COUNTY to tolerate the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the corrections officers and/or Jail medical staff to continue to engage in the unlawful behavior.

249.    Upon information and belief, instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant, EATON COUNTY refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the corrections officers refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, EATON COUNTY condoned, ratified or encouraged the corrections officers and jail medical staff to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

250.    Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant, EATON COUNTY refused to discipline the medical staff at the Jail, failed to fully investigate

inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, EATON COUNTY condoned, ratified or encouraged the Jail medical staff and correction officers to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

251.    As a direct and proximate result of Defendant EATON COUNTY custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendants DOUG R. SHARP, DENNIS GERBER, CARRIE HUNT, and DON HAGA, demonstrated a reckless disregard to SPALDING's serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical, which posed an obvious risk of substantial harm to SPALDING and caused constitutional deprivation of her clearly established rights, privileges and immunities in violation of the Eighth Amendment (through the Fourteenth Amendment) of the Constitution of the United States, including, but not limited to:

      a.  Deliberately ignoring Plaintiff Decedent, SPALDING's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

      b.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent cognitive impairment;

      c.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent emotional symptoms;

      d.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent psychological symptoms;

      e.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent behavioral symptoms;

f.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent gastrointestinal symptoms;

g.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent mood symptoms;

h.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, recent heroin use and/or withdrawal;

i.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent injury to her left hand;

j.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent trauma to her left hand;

k.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent infection to her left forearm and hand;

l.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent swelling to her left forearm and hand;

m.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

n.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

o.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

p.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

q.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

r.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

s.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

{00582328.DOCX}                            75

t.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

u.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

v.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

w.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

x.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

y.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

z.  Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

aa. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

bb. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

cc. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medical attention as required by jail policy for moderate to severe withdrawal syndrome;

dd. Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ee. Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

ff. Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

gg. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

hh. Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

ii. Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

jj. Any and all other breaches as they become known throughout the course of this litigation.

252.    As a direct and proximate result of Defendant, EATON COUNTY's, custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

253.    As a direct and proximate result of Defendant EATON COUNTY custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

254.    The conduct of INGHAM COUNTY INDIVIDUAL DEFENDANTS was and remains extreme and outrageous subjecting Defendants to punitive damages.

255. Additionally, all of the Eaton County Defendants' conduct for the failures described herein were the driving force resulting in the Constitution violations.

**WHEREFORE**, Plaintiff requests the following relief:

a) Reasonable medical, hospital, funeral and burial expenses;

b) Conscious pain and suffering;

c) Loss of financial support;

d) Loss of service;

e) Loss of gifts or other valuable gratuities;

f) Loss of comfort, society and companionship;

g) Compensatory and punitive damages;

h) Reasonable attorney fees, costs and interest; and

i) Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

## COUNT VI
## 42 U.S.C. § 1983 - FAILURE TO TRAIN/SUPERVISE;  CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL RIGHTS; INADEQUATE POLICY
## DEFENDANT CITY OF LANSING

256. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

257. The conduct of Defendants PETER SCACCIA, MELISSA OUDERKIRK, JAMERIA CALDWELL, and the LANSING CITY JAIL SECOND SHIFT STAFF as described throughout, was performed under the color of law while these Defendants were

working for and with the authority of Defendants CITY OF LANSING, and/or Chief Michael Yankowski.

258.    At all relevant times, Defendants CITY OF LANSING, and/or Chief Michael Yankowski, had a custom, pattern, and/or practice of failing to supervise and/or train Defendants PETER SCACCIA, MELISSA OUDERKIRK, JAMERIA CALDWELL, and LANSING CITY JAIL SECOND SHIFT STAFF in a reasonable manner to prevent such conduct.

259.    The failure of Defendants CITY OF LANSING, and/or Chief Michael Yankowski,  to properly supervise and/or train its personnel who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such as was caused to Plaintiff.

260.    Defendants CITY OF LANSING, and/or Chief Michael Yankowski,  were aware or should have been aware that Defendants PETER SCACCIA, MELISSA OUDERKIRK, JAMERIA CALDWELL, SERGEANT RODNEY ANDERSON, OFFICER ELIZABETH BARNHILL, OFFICER ALAN BERISH, OFFICER JASON DAVIS, OFFICER ROBERT DAVIS, SERGEANT KATHERINE DIEHL, SERGEANT CHARLES FUNK, OFFICER JACOB GRANT, OFFICER RAYMONE GUDE, OFFICER LANA HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER BRIAN KELLEY, OFFICER REBECCA KOPF, OFFICER PATRICIA LAYNE, OFFICER KURT MARTENS, SERGEANT GUY PACE, OFFICER LORRIE RIDENOUR, OFFICER GREGG ROSENBERY, OFFICER DAMON SHERRILL, SERGEANT RYAN WILCOX, OFFICER CHARLES WRIGHT, and the LANSING CITY JAIL

SECOND SHIFT STAFF and its correction personnel would confront situations as described herein and that a substantial risk of serious harm existed, and was conscious of the risk of harm posed by Defendants PETER SCACCIA, MELISSA OUDERKIRK, JAMERIA CALDWELL, and LANSING CITY JAIL SECOND SHIFT STAFF.

261.    At all times relevant, there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Lansing Police Department personnel Staff and Sworn Police Officers, as described in the preceding paragraphs.

262.    At all times relevant, Defendants, CITY OF LANSING and/or Chief Michael Yankowski, through its appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Lansing Police Department personnel, as described in the preceding paragraphs.

263.    At all times relevant, Defendants, CITY OF LANSING and/or Chief Michael Yankowski,was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Lansing Police Department personnel, as described in the preceding paragraphs.

264.    Upon all information and belief Defendants, CITY OF LANSING and/or Chief Michael Yankowski, and its policy makers acquiesced in the Lansing Police Department personnel's violation of the inmates' rights to medical attention for serious medical needs.

265.    Upon all information and belief, it was the custom or practice of Defendant, CITY OF LANSING, to tolerate the Lansing Police Department personnel's

violation of the inmates' rights to medical attention for serious medical needs, which allowed the Lansing Police Department personnel to continue to engage in the unlawful behavior.

266.    Upon information and belief, instead of suspending or disciplining the Lansing Police Department personnel for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendants, CITY OF LANSING and/or Chief Michael Yankowski, refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the Lansing Police Department personnel's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, Defendants, CITY OF LANSING and/or Chief Michael Yankowski, condoned, ratified or encouraged the Lansing Police Department personnel to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

267.    As a direct and proximate result of Defendants, CITY OF LANSING and/or Chief Michael Yankowski, custom or practice of tolerating the violation of federal rights the Lansing Police Department personnel's violation of the inmates' rights to medical attention for serious medical needs, Defendants PETER SCACCIA, MELISSA OUDERKIRK, JAMERIA CALDWELL, SERGEANT RODNEY ANDERSON, OFFICER ELIZABETH BARNHILL, OFFICER ALAN BERISH, OFFICER JASON DAVIS, OFFICER ROBERT DAVIS, SERGEANT KATHERINE DIEHL, SERGEANT CHARLES FUNK, OFFICER JACOB GRANT, OFFICER RAYMONE GUDE, OFFICER LANA HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER BRIAN

KELLEY, OFFICER REBECCA KOPF, OFFICER PATRICIA LAYNE, OFFICER
KURT MARTENS, SERGEANT GUY PACE, OFFICER LORRIE RIDENOUR,
OFFICER GREGG ROSENBERY, OFFICER DAMON SHERRILL, SERGEANT
RYAN WILCOX, OFFICER CHARLES WRIGHT, and LANSING CITY JAIL
SECOND SHIFT STAFF demonstrated a reckless disregard to SPALDING's serious
medical needs that were so obvious that even a layperson would easily recognize the
necessity for medical attention, which posed an obvious risk of substantial harm to
SPALDING and caused constitutional deprivation of her clearly established rights,
privileges and immunities in violation of the Eighth Amendment (through the Fourteenth
Amendment) of the Constitution of the United States, including, but not limited to:

    a.  Deliberately ignoring Plaintiff Decedent, SPALDING's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

    b.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent cognitive impairment;

    c.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent emotional symptoms;

    d.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent psychological symptoms;

    e.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent behavioral symptoms;

    f.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent gastrointestinal symptoms;

    g.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent mood symptoms;

    h.  Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, recent heroin use and/or withdrawal;

i.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent injury to her left hand;

j.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent trauma to her left hand;

k.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent infection to her left forearm and hand;

l.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent swelling to her left forearm and hand;

m.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

n.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

o.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

p.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

q.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

r.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

s.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

t.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

u.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

v.   Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

w. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, after being made aware she was in substantial physical pain as a result of the trauma to her left hand;

x. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

y. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

z. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

aa. Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

bb. Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

cc. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

dd. Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ee. Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

ff. Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

gg. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

hh. Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

ii. Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

jj. Failure to obtain medical attention for Plaintiff Decedent, SPALDING consistent with Lansing Police Department Policy;

kk. Failure to obtain medical attention for Plaintiff Decedent, SPALDING after SPALDING informed Defendants that she needed to go to the hospital for treatment for the trauma sustained to her left hand;

ll. Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medical attention as required by jail policy, if any policy, for moderate to severe withdrawal syndrome and/or failure to have such policy;

mm. Failed to act in a reasonable manner;

nn. Any and all other breaches as they become known throughout the course of this litigation.

268.    As a direct and proximate result of Defendants CITY OF LANSING and/or Chief Michael Yankowski, custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

269.    As a direct and proximate result of Defendants CITY OF LANSING and/or Chief Michael Yankowski, custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff has sustained and is entitled to

compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

270.    Additionally, all of Defendants CITY OF LANSING and/or Chief Michael Yankowski's, conduct for failures described herein were the driving force behind the constitutional violations.

**WHEREFORE**, Plaintiff requests the following relief:

a)  Reasonable medical, hospital, funeral and burial expenses;

b)  Conscious pain and suffering;

c)  Loss of financial support;

d)  Loss of service;

e)  Loss of gifts or other valuable gratuities;

f)  Loss of comfort, society and companionship;

g)  Compensatory and punitive damages;

h)  Reasonable attorney fees, costs and interest; and

i)  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

**COUNT VII**
**42 U.S.C. § 1983 - FAILURE TO TRAIN/SUPERVISE; CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL RIGHTS; INADEQUATE POLICY**
**DEFENDANT INGHAM COUNTY**

271.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

272.    The conduct of INGHAM COUNTY INDIVIDUAL DEFENDANTS as described throughout, was performed under the color of law while these Defendants were working for and with the authority of Defendant INGHAM COUNTY.

273.    At all relevant times, Defendant, INGHAM COUNTY, had a custom, pattern, and/or practice of failing to supervise and/or train INGHAM COUNTY INDIVIDUAL DEFENDANTS and other staff in a reasonable manner to prevent such conduct.

274.    The failure of Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS, to properly supervise and/or train its personnel who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such as was caused to Plaintiff.

275.    Defendants    INGHAM    COUNTY,    and/or    SHERIFF    SCOTT WRIGGLESWORTH,  UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  was aware or should have been aware that INGHAM COUNTY INDIVIDUAL DEFENDANTS and its correction personnel would confront situations as described herein and that a substantial risk of serious harm existed, and was conscious of the risk of harm posed by INGHAM COUNTY INDIVIDUAL DEFENDANTS.

276.    At all times relevant, there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and corrections officers, as described in the preceding paragraphs.

277.    At all times relevant, Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS, through its appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and corrections officers, as described in the preceding paragraphs.

278.    At all times relevant, Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and corrections officers, as described in the preceding paragraphs.

279.    Upon all information and belief Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS, and its policy makers acquiesced in the corrections officers and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

280.    Upon all information and belief, it was the custom or practice of Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  to tolerate the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the corrections officers and/or Jail medical staff to continue to engage in the unlawful behavior.

281.   Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH,    UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  refused to discipline the medical staff at the Jail, failed to fully investigate inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  condoned, ratified or encouraged the Jail medical staff and correction officers to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

282.   Upon information and belief, instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH,    UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,   refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the corrections officers refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  condoned, ratified or encouraged the corrections officers and jail medical staff

to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

283.    As a direct and proximate result of Defendants INGHAM COUNTY, and/or SHERIFF SCOTT WRIGGLESWORTH, UNDERSHERIFF ANDREW BOUCK, and MAJOR SAM L. DAVIS,  custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendants INGHAM COUNTY INDIVIDUAL DEFENDANTS demonstrated a reckless disregard to SPALDING'S serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to SPALDING and caused constitutional deprivation of her clearly established rights, privileges and immunities in violation of the Eighth Amendment (through the Fourteenth Amendment) of the Constitution of the United States, including, but not limited to:

      a.    Deliberately ignoring Plaintiff Decedent, Spalding's, obvious serious medical needs and failing to obtain medical attention within a reasonable time frame;

      b.    Deliberately ignoring Plaintiff Decedent, Spalding's, known serious medical needs and failing to obtain medical attention within a reasonable time frame;

      c.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent cognitive impairment;

      d.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent emotional symptoms;

      e.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent psychological symptoms;

f.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent behavioral symptoms;

g.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent gastrointestinal symptoms;

h.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent mood symptoms;

i.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, recent heroin use and/or withdrawal;

j.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent injury to her left hand;

k.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent trauma to her left hand;

l.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent infection to her left forearm and hand;

m.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent swelling to her left forearm and hand;

n.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent extreme redness to her left forearm and hand;

o.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, known extremely high temperature;

p.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume food;

q.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, readily apparent inability to consume liquids;

r.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious persistent vomiting;

s.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's obvious persistent diarrhea;

t.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious profuse sweating;

u.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious weakness;

v.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious fatigue;

w.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING's, obvious  abdominal cramping;

x.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, after being made aware she was in substantial physical pain as a result of the trauma to her left hand;

y.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who explained she was under the influence of heroin;

z.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, who was obviously in the throes of heroin withdrawal;

aa.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious  experiencing a large scale, serious, ascending infection in her left forearm and hand;

bb.      Failure to obtain medical attention for Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious confusion and diminished mental capacity;

cc.      Failure to obtain medical attention for Plaintiff Decedent, SPALDING, obvious dehydration;

dd.    Failure to obtain treatment for Plaintiff Decedent, SPALDING, by emergently transferring her to a hospital for medical treatment;

ee.    Failure to obtain intravenous nutrition, medication or treatment for Plaintiff Decedent, SPALDING;

ff.    Failure to provide close monitoring and supervision for Plaintiff Decedent, SPALDING;

gg.    Failure to obtain electrolyte replacement for Plaintiff Decedent, SPALDING;

hh.    Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, SPALDING;

ii.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of heroin withdrawal and/ or other medical condition;

jj.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING obvious signs of infection and/ or other medical condition;

kk.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING after SPALDING informed Defendants that she needed to go to the hospital for treatment for the trauma sustained to her left hand;

ll.    Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medical attention as required by jail policy for moderate to severe withdrawal syndrome;

mm.    Failure to obtain medical attention for Plaintiff Decedent, SPALDING'S, seizure like activity;

nn.     Failure to obtain medical attention for Plaintiff Decedent, SPALDING consistent with Ingham County Sheriff's Office Policy;

oo.     Failure to obtain treatment for Plaintiff Decedent, SPALDING, by administering the appropriate medication as recommended by jail policy for moderate to severe opiate withdrawal syndrome;

pp.     Failure to obtain and/monitor Plaintiff Decedent, SPALDING, vitals;

qq.     Depriving the Plaintiff Decedent, SPALDING, of a clean, habitable environment;

rr.     Any and all other breaches as they become known throughout the course of this litigation.

284.    As a direct and proximate result of INGHAM COUNTY's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff Decedent, SPALDING, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died of apparent disseminated infection (sepsis) with a contributing condition of opiate (heroin) withdrawal.

285.    As a direct and proximate result of Defendant INGHAM COUNTY's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff has sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

286.    Additionally, all of Defendants INGHAM COUNTY, MAJOR DAVIS, SHERIFF WRIGGLESWORTH and UNDERSHERIFF BOUCK's conduct for failures described herein were the driving force behind the Constitutional violations.

WHEREFORE, Plaintiff requests the following relief:

a)  Reasonable medical, hospital, funeral and burial expenses;

b)  Conscious pain and suffering;

c)  Loss of financial support;

d)  Loss of service;

e)  Loss of gifts or other valuable gratuities;

f)  Loss of comfort, society and companionship;

g)  Compensatory and punitive damages;

h)  Reasonable attorney fees, costs and interest; and

i)  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. § 1983 and 1988.

Respectfully submitted,

*/s/James J. Harrington, IV*
GEOFFREY N. FIEGER (P30441)
JAMES J. HARRINGTON, IV (P65351)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, MI 48075
Dated: July 24, 2018            (248) 355-5555
j.harrington@fiegerlaw.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KINDI SPALDING, as Personal Representative for
the Estate of JESSICA SPALDING, Deceased,

      Plaintiff,

v.

EATON COUNTY, a Municipal Entity, OFFICER
DOUG R. SHARP, OFFICER DENNIS GERBER,
OFFICER CARRIE HUNT, OFFICER DON HAGA,
SHERIFF THOMAS REICH, UNDERSHERIFF
JEFFREY COOK, CAPTAIN ROBERT JORDAN,

CITY OF LANSING, a Municipal Entity, OFFICER
MELISSA OUDERKIRK, OFFICER PETER SCACCIA,
OFFICER JAMERIA CALDWELL, SERGEANT
RODNEY ANDERSON, OFFICER ELIZABETH
BARNHILL, OFFICER ALAN BERISH, OFFICER
JASON DAVIS, OFFICER ROBERT DAVIS,
SERGEANT KATHERINE DIEHL, SERGEANT
CHARLES FUNK, OFFICER JACOB GRANT,
OFFICER RAYMONE GUDE, OFFICER LANA
HADZAJLIC, OFFICER KRISTIN HUDSON, OFFICER
BRIAN KELLEY, OFFICER REBECCA KOPF,
OFFICER PATRICIA LAYNE, OFFICER KURT
MARTENS, SERGEANT GUY PACE, OFFICER
LORRIE RIDENOUR, OFFICER GREGG
ROSENBERY, OFFICER DAMON SHERRILL,
SERGEANT RYAN WILCOX, OFFICER CHARLES
WRIGHT, CHIEF MICHAEL YANKOWSKI, in heir
Individual and Official Capacities,

INGHAM COUNTY, a Municipal Entity, DEPUTY
JEFFREY CHAPPELL, PATRICK CRANE  DNP, RN,
CAROL HILL FNP, KENNETH TYLER RN,
JENNIFER HAMPTON RN, JONELLE BORSETH RN,
DEPUTY CHARMAINE HAWKINS,  LIEUTENANT
DANIELLE PATRICK, DEPUTY CHELSEA
STEWART, DEPUTY HEATHER SALAZAR, DEPUTY
NICHOLAS WAGNER,  DEPUTY TORREZ, DEPUTY
MORGAN GHYRA, DEPUTY BRINAH COOK,
DEPUTY CONNER PLANTZ, DEPUTY RODOLFO

Case No. 18 -
Hon.

GAYTAN, DEPUTY RYAN WATTS, DEPUTY
DARROLL GATSON, SERGEANT THOMAS
AGUEROS, DEPUTY CHRIS HAGERMAN, DEPUTY
SANDRA DOUSE,            DEPUTY MATTHEW
WATTERS, DEPUTY NATHAN SMITH, SERGEANT
MELISSA    BROWN,    SHERIFF    SCOTT
WRIGGLESWORTH,    UNDERSHERIFF ANDREW
BOUCK, MAJOR SAM L. DAVIS, in their Individual
and Official Capacities,

       Defendants.

---

GEOFFREY N. FIEGER (P30441)
JAMES J. HARRINGTON, IV (P65351)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorneys for Plaintiff
19390 West 10 Mile Road
Southfield, MI 48075
(248) 355-5555

EDWAR A. ZEINEH  (P71923)
Co-Counsel for Plaintiff
1704 East Michigan Avenue
Lansing, MI 48912
(517) 292-7000
zeinehlaw@gmail.com

---

## DEMAND FOR TRIAL BY JURY

      NOW COMES Plaintiff, KINDI SPALDING, as Personal Representative for the

Estate of JESSICA SPALDING, deceased, by and through her attorneys, FIEGER,

FIEGER, KENNEY & HARRINGTON, P.C., and EDWAR A. ZEINEH who hereby

states her demand for a jury trial in the above captioned matter.

Respectfully submitted,

/s/James J. Harrington, IV
GEOFFREY N. FIEGER (P30441)
JAMES J. HARRINGTON, IV (P65351)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, MI 48075
Dated: July 24, 2018                    (248) 355-5555
j.harrington@fiegerlaw.com