UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KINDI SPALDING,

       Plaintiff,                                Hon. Robert J. Jonker

v.                                                              Case No. 1:18-cv-819

EATON COUNTY, et al.,

       Defendants.

_____/

**OPINION**

This is a civil rights action brought on behalf of Jessica Spalding who tragically died on August 14, 2015, while in custody at the Ingham County Jail. Ms. Spaulding had been arrested on August 11 and lodged at the Eaton County Jail. She was eventually transferred to the Ingham County Jail with a brief stay at the Lansing City Jail. Plaintiff's personal representative initiated this action against Eaton County, Ingham County, the City of Lansing, and 59 individuals.

This matter is before the Court on certain City of Lansing Defendants' Motion to Dismiss (ECF No. 7),[1] certain Eaton County Defendants' Motion to Dismiss (ECF No. 13),[2] and Defendants Patrick Crane and Carol Hill's Motion for Summary Judgment, (ECF No. 20). For the reasons discussed herein, the motions to dismiss (ECF No. 7 and 13) will be granted and the motion for summary judgment (ECF No. 20) will be denied.[3]

---

[1] Sergeants Katherine Diehl, Rodney Anderson, and Ryan Wilcox; Officers Jason Davis, Kristin Hudson, Rebecca Kopf, Lorrie Ridenour, Damon Sherrill, and Charles Wright; and Chief Michael Yankowski.
[2] Sheriff Thomas Reich, Undersheriff Jeff Cook, and Captain Robert Jordan.
[3] Certain defendants filed a response and an amended response to the City of Lansing Defendants' Motion to Dismiss. (ECF No. 17, 18). They assert that they are entitled to judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 18, PageID.1084). As

**BACKGROUND**

Kindi Spalding, with the assistance of counsel, initiated the present action in her capacity as the Personal Representative of the Estate of Jessica Spalding. (ECF No. 1). In her complaint, Plaintiff alleges the following.

On August 11, 2015, Jessica Spalding was arrested and transported to the Eaton County Jail. Upon admission to the jail, Ms. Spalding acknowledged to jail personnel that she had recently used heroin. By the time she was admitted to the jail, however, Ms. Spalding was "withdrawing from heroin use" and exhibited an elevated temperature as well as "an infected swollen left hand from intravenous heroin use." Despite exhibiting "readily apparent cognitive, physical, emotional, psychological, behavioral, gastrointestinal, and mood symptoms" of heroin withdrawal, she was not provided medical treatment. The following afternoon, Ms. Spalding "was transferred to the Lansing City Jail" regarding a separate matter.

Upon admission to the Lansing City Jail, Ms. Spalding acknowledged using heroin recently. She further reported that her hand was "hurting" and that she was experiencing "a really high fever." Ms. Spalding later requested to be transported to a hospital for treatment, but this request was denied. Soon thereafter, she began vomiting and experiencing diarrhea. Between 9:08 p.m. on August 12, 2015, and 10:14 a.m. on August 13, 2015, Ms. Spalding vomited and/or experienced diarrhea at least 26 times. Despite exhibiting these and other symptoms of her "ongoing medical emergency," Plaintiff received no medical care.

On the afternoon of August 13, 2015, Ms. Spalding was transferred to the Ingham County Jail. Officials at the Ingham County Jail were informed of Ms. Spalding's heroin use, hand injury,

---

this is not a proper motion, the Court will take no action on their suggestion. If they believe they have a basis for relief under Rule 12, or otherwise, they need to file their own motion.

and "otherwise made aware of [Ms. Spalding's] ongoing medical emergency." She was, nevertheless, not provided any medical care. In the early morning hours of August 14, 2015, a nurse examined Ms. Spalding and noted the presence of "needle marks" that "required immediate attention." The nurse further observed that Ms. Spalding was tachycardic and "withdrawing from heroin." The nurse, however, did not provide Ms. Spalding with any medical treatment, but instead placed Ms. Spalding on the jail's opiate withdrawal monitoring protocol and "sent her back to her cell."

By the morning of August 14, 2015, Ms. Spalding was "vomiting and constantly experiencing fecal incontinence" and was unable to eat breakfast. Jail personnel still did not provide Ms. Spalding with medical treatment, but instead instructed her cellmate to "move [Ms. Spalding's] mattress to the floor near the toilet so that she would vomit and defecate less on the floor." Jail personnel brought Ms. Spalding a "liquid lunch" which she was unable to eat. Shortly thereafter, Ms. Spalding experienced another episode of fecal incontinence after which she was transported "to the medical post." Ms. Spalding was examined by two medical professionals who, despite observing that Ms. Spalding was experiencing a medical emergency, provided her with "no medical treatment." Ms. Spalding was informed that a nurse would check on her later, but that she should return to her cell in the meantime.

At approximately, 5:45 p.m., a deputy observed Ms. Spalding "laying on the floor of her cell surrounded by uneaten containers of food which were delivered to her by jail-mates throughout the day." Despite knowing that Ms. Spalding was in "very bad shape," this deputy did not secure medical treatment for her, but instead merely instructed her "to consume the liquid food in order to regain strength." At approximately 7:00 p.m., other inmates began hearing "strange noises"

3

emanating from Ms. Spalding's cell.  At approximately 7:31 p.m., a deputy discovered Ms. Spalding "unresponsive and laying face down on her mattress which was still on the floor of her cell with vomit encompassing her face."  Medical personnel were immediately summoned and efforts were undertaken to revive her.  These efforts were unsuccessful, however, and Ms. Spalding was pronounced dead at 8:25 p.m.

With respect to the individual defendants, Plaintiff alleges deliberate indifference to Jessica Spalding's serious medical needs.  As for the municipal defendants, Plaintiff alleges a failure to train and supervise.  A number of the individual defendants have now moved for relief and Plaintiff has responded thereto.

## ANALYSIS

**I.   Motions to Dismiss**   (ECF No. 7 and 13)

The following defendants move for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff's allegations fail to state a claim on which relief may be granted: (1) Katherine Diehl; (2) Rodney Anderson; (3) Jason Davis; (4) Kristin Hudson; (5) Rebecca Kopf; (6) Lorrie Ridenour; (7) Damon Sherrill; (8) Ryan Wilcox; (9) Charles Wright; (10) Michael Yankowski; (11) Thomas Reich; (12) Jeffrey Cook; and (13) Robert Jordan.

A motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief.  *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).  Pursuant to Rule 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are]

enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ibid.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

A.  Defendants Diehl, Anderson, Davis, Hudson, Kopf, Ridenour, Sherrill, Wilcox, and Wright

In Count III of her complaint, Plaintiff advances the claim that these defendants were deliberately indifferent to Jessica Spalding's serious medical needs in violation of Ms. Spalding's constitutional rights. The proscription against cruel and unusual punishment, articulated by the

5

Eighth Amendment, is equally applicable, by way of the Fourteenth Amendment, to pre-trial detainees such as Ms. Spalding. *See Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). But if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid.*

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the

6

> official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

In her complaint, Plaintiff has failed to allege facts against these defendants which, if proven, would establish that these defendants were subjectively aware that Jessica Spalding required medical treatment during the time period in question. In fact, these defendants are referenced in only three locations in Plaintiff's complaint: (1) paragraph 115; (2) paragraph 119; and (3) Count III. In paragraph 115, Plaintiff alleges that defendants had a duty to monitor Spalding while she was incarcerated in the Lansing County Jail. In paragraph 119, Plaintiff asserts that defendants "were aware, deliberately indifferent, and failed to intervene concerning [Spalding's] ongoing medical emergency." In the absence of specific factual assertions, however, this allegation is nothing more than an insufficient legal conclusion. *See, e.g., Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) ("damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right") (citation omitted). Finally, the assertions in Count III of Plaintiff's complaint likewise constitute nothing

7

more than insufficient legal conclusions. Accordingly, because Plaintiff has failed to allege facts sufficient to establish that these defendants were subjectively aware of the medical emergency Jessica Spalding was allegedly experiencing, Plaintiff's claims against these defendants must be dismissed.

      B.      Defendant Cook

In Count IV of her complaint, Plaintiff asserts that Defendant Cook was deliberately indifferent to Jessica Spalding's serious medical needs in violation of Spalding's constitutional rights. Plaintiff has failed, however, to allege facts against Defendant Cook which, if proven, would establish that Cook was subjectively aware that Jessica Spalding required medical treatment during the time period in question.

Plaintiff's complaint references Defendant Cook in two locations. In paragraph 175, Plaintiff alleges that Defendant Cook failed to properly monitor Jessica Spalding. In Count IV, Plaintiff advances no specific factual allegations against Cook, but rather asserts the legal conclusion that Cook violated Spalding's Eighth Amendment rights. As Plaintiff has failed to allege facts sufficient to establish that Defendant Cook was subjectively aware of the medical emergency Jessica Spalding was allegedly experiencing, Plaintiff's claim against Cook must be dismissed.

      C.      Defendants Yankowski, Reich, and Jordan

With respect to these defendants, Plaintiff has neither asserted a cause of action nor alleged facts that would support such. The factual allegations section of Plaintiff's complaint contains absolutely no mention of these defendants. In Counts V and VI, Plaintiff alleges that these defendants failed to properly train and/or supervise certain subordinates, but these allegations are

in the context of failure to train claims against Eaton County and the City of Lansing. Moreover, because these defendants have been sued in their official capacity only, any failure to train claims allegedly asserted against these defendants are redundant and superfluous to the failure to train claims asserted against Eaton County and the City of Lansing. Accordingly, Plaintiff's claims against Defendants Yankowski, Reich, and Jordan must be dismissed.

        D.        Plaintiff's Request to Amend Complaint

In response to the present motions, Plaintiff requests that "in the unlikely event" the Court finds her allegations insufficient the Court permit her to amend her complaint. Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint shall be "freely" given "when justice so requires." The factors relevant when considering a motion to amend include: (1) undue delay in filing, (2) lack of notice to the opposing party, (3) bad faith by the moving party, (4) repeated failure to cure deficiencies by previous amendments, (5) undue prejudice to the opposing party, and (6) futility of amendment. *See Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458 (6th Cir. 2001).

Consideration of these factors weighs against Plaintiff's request. Plaintiff initiated this action more than one year ago and has failed to move to amend her complaint during that time. Plaintiff's inaction in this regard demonstrates both untimeliness and bad faith. Plaintiff has failed to suggest what additional facts she could allege against these defendants which would cure the deficiencies noted above. The Court, therefore, is unpersuaded that Plaintiff should be permitted to amend her complaint to avoid dismissal of the claims in question.

**II.     Motion for Summary Judgment**   (ECF No. 20)

In paragraphs 152-58 of her complaint, Plaintiff alleges that medical professionals Patrick Crane and Carol Hill "observed" Jessica Spalding experiencing the following symptoms: (1) accelerate respirations and rapid heart rate; (2) irritability; (3) malaise; (4) weakness; (5) joint and muscle pain; (6) tachycardia; (7) agitation; (8) anxiety; (9) fear; and (10) an inability to even sit in a wheelchair.   Plaintiff further alleges, however, that despite recognizing that Ms. Spalding was experiencing a medical emergency, Defendants Crane and Hill failed to provide her with any medical treatment.   In Count IV of her complaint, Plaintiff alleges that Defendants Crane and Hill were deliberately indifferent to Jessica Spalding's serious medical needs in violation of Ms. Spalding's constitutional rights.   Defendants Crane and Hill now move for summary judgment.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that

10

there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

In support of their motion, Defendants Crane and Hill have submitted absolutely no evidence, but instead argue that Plaintiff's allegations fail to state a claim. The allegations in Plaintiff's complaint, however, clearly state a claim for deliberate indifference. Moreover, as Plaintiff persuasively argues, summary judgment is premature as discovery is still ongoing. In this regard, Plaintiff has invoked Rule 56(d) and submitted a sworn declaration detailing the discovery required to properly oppose the present motion for summary judgment. *See* Fed. R. Civ. P. 56(d). In sum, Defendants have failed to satisfy their burden to obtain summary judgment. Plaintiff has likewise demonstrated that summary judgment is premature. Accordingly, the motion for summary judgment by Defendants Crane and Hill will be denied. The Court likewise rejects Defendants' claim to qualified immunity as any reasonable official would have understood that if she acted as Plaintiff alleges that such violates the Eighth Amendment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## **CONCLUSION**

For the reasons articulated herein, the motions to dismiss (ECF No. 7 and 13) are granted; and the motion for summary judgment (ECF No. 20) is denied. Plaintiff's claims against the following defendants are hereby dismissed: (1) Katherine Diehl; (2) Rodney Anderson; (3) Jason Davis; (4) Kristin Hudson; (5) Rebecca Kopf; (6) Lorrie Ridenour; (7) Damon Sherrill; (8) Ryan Wilcox; (9) Charles Wright; (10) Michael Yankowski; (11) Thomas Reich; (12) Jeffrey Cook; and (13) Robert Jordan.   An Order consistent with this Opinion will enter.


Dated:      August 30, 2019              /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE