UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K<small>INDI</small> S<small>PALDING</small>,

   Plaintiff,        Hon. Robert J. Jonker

v.              Case No. 1:18-cv-819

E<small>ATON</small> C<small>OUNTY</small>, et al.,

   Defendants.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

  This matter is before the Court on Plaintiff's motion, pursuant to Mich. Comp. Laws § 600.2922, to approve a settlement agreement she reached with Defendant Eaton County and the individual Eaton County defendants: Doug Sharp, Dennis Gerber, Carrie Hunt, and Don Haga (Eaton County Defendants). (ECF No. 110). Under the settlement agreement, the Eaton County Defendants would pay Plaintiff $50,000.00, and Plaintiff seeks authorization to use the entire amount to reimburse Plaintiff's counsel for litigation expenses. The motion is unopposed.

  The Court conducted a hearing on the motion, at which Plaintiff testified. In accordance with 28 U.S.C. § 636(b), and for the reasons articulated herein, the undersigned recommends that Plaintiff's motion be granted.

  It should be noted that the undersigned judicial officer has concerns regarding the shot-gun approach Plaintiff has taken to this case – naming no fewer than 63 defendants. The undersigned is also concerned that this case has been over litigated, which has contributed to the considerable litigation expenses to date.

## BACKGROUND

This case results from the tragic death of a young woman, Jessica Spalding, while incarcerated at the Ingham County Jail. In the three days immediately preceding her death, Ms. Spalding was also held in the Eaton County Jail and the Lansing City Jail.

Kindi Spalding, represented by counsel, initiated the present action in her capacity as the Personal Representative of the Estate of Jessica Spalding. (ECF No. 1). In her complaint, Plaintiff alleges the following.

On August 11, 2015, Jessica Spalding was arrested and transported to the Eaton County Jail. Ms. Spalding told jail personnel that she had recently used heroin, and that she was in withdrawal. She had an elevated temperature as well as "an infected swollen left hand from intravenous heroin use." Despite exhibiting symptoms of heroin withdrawal, Ms. Spalding was not provided medical treatment.

The following afternoon, she was transferred to the Lansing City Jail regarding a separate matter. Ms. Spalding advised that she had been using heroin recently. She also reported that her hand was hurting, and that she was experiencing a high fever. Ms. Spalding later asked to be transported to a hospital for treatment, but her request was denied. Soon thereafter, she began vomiting and experiencing diarrhea. Despite exhibiting these and other symptoms, Ms. Spalding received no medical care.

On the afternoon of August 13, 2015, Ms. Spalding was transferred to the Ingham County Jail. Officials at the Ingham County Jail were informed of her

heroin use, hand injury, and otherwise made aware of her ongoing "medical emergency." Ms. Spalding was, nevertheless, not provided any medical care. In the early morning hours of August 14, 2015, a nurse examined Ms. Spalding and noted the presence of needle marks that "required immediate attention." The nurse further observed that Ms. Spalding was tachycardic and "withdrawing from heroin." The nurse, however, did not provide Ms. Spalding with any medical treatment, but instead placed her on the jail's opiate withdrawal monitoring protocol and "sent her back to her cell."

By the morning of August 14, 2015, Ms. Spalding was vomiting, experiencing fecal incontinence, and unable to eat. Jail personnel did not provide medical treatment, but instead instructed Ms. Spalding's cellmate to "move [Ms. Spalding's] mattress to the floor near the toilet so that she would vomit and defecate less on the floor." Jail personnel brought Ms. Spalding a "liquid lunch," which she was unable to consume. Shortly thereafter, Ms. Spalding experienced another episode of fecal incontinence after which she was transported "to the medical post." She was examined by two medical professionals who provided no medical treatment. Ms. Spalding was informed that a nurse would check on her later, but to return to her cell in the meantime.

At approximately 5:45 p.m., a deputy observed Ms. Spalding "laying on the floor of her cell surrounded by uneaten containers of food which were delivered to her by jail-mates throughout the day." Despite knowing that Ms. Spalding was in "very bad shape," this deputy did not secure medical treatment for Ms. Spalding, but

instead merely instructed her "to consume the liquid food in order to regain strength." At approximately 7:00 p.m., other inmates began hearing "strange noises" emanating from Ms. Spalding's cell. Approximately thirty minutes later, a deputy discovered Ms. Spalding unresponsive and lying face down on her mattress with vomit covering her face. Medical personnel were immediately summoned, and efforts were made to revive Ms. Spalding. These efforts were unsuccessful, however, and Ms. Spalding was pronounced dead at 8:25 p.m.

Plaintiff initiated this action against Eaton County, Ingham County, the City of Lansing, as well as some sixty individuals. With respect to the individual defendants, Plaintiff alleges deliberate indifference to Jessica Spalding's serious medical needs. As for the municipal defendants, Plaintiff alleges a failure to train and/or supervise.

## ANALYSIS

Under the settlement agreement, the Eaton County Defendants agreed to pay Plaintiff $50,000.00, without admitting liability, in exchange for a general release of all claims against them relating to Jessica Spalding's incarceration at the Eaton County Jail on August 11-12, 2015. (General Release, ECF No. 115). Plaintiff Kindi Spalding signed the agreement as the Personal Representative of the Estate of Jessica Spalding. (*Id.* at PageID.2157).

Plaintiff now seeks approval of the $50,000.00 settlement agreement, as well as the authorization to distribute these funds to the law firm Fieger, Fieger, Kenney & Harrington, which represents Plaintiff in this matter. (ECF No. 110-2,

PageID.2136). The entirety of these funds is to be applied to costs and expenses incurred in this case, the total amount of which exceeded $75,000.00 at the time the motion was filed. (*Id.*).

The approval and distribution of the settlement proceeds in this action is governed by Michigan's Wrongful Death Act, Mich. Comp. Laws § 600.2922, as there is no federal wrongful death statute that provides a remedy. *See Robinson v. Fiedler*, 870 F. Supp. 193, 195 (W.D. Mich. 1994), *affirmed* 91 F.3d 144 at \*3 (6th Cir. 1996) (Table Case) (holding that district court had jurisdiction to approve or reject a wrongful death settlement agreement and to distribute proceeds under Mich. Comp. Laws § 600.2922(5)-(9)); *Estate of Fahner ex rel. Fahner v. Wayne County*, Case No. 08-cv-14344, 2014 WL 2511666 at \*1-2 (E.D. Mich. June 4, 2014). Under that statute, the personal representative of the estate – in this case, Plaintiff Kindi Spalding – must seek approval of any proposed settlement, and the Court must conduct a hearing to approve or reject it. MICH. COMP. LAWS § 600.2922(5).

If the settlement agreement is approved, the Court must also approve the distribution of the settlement funds, which includes the payment of certain expenses. MICH. COMP. LAWS § 600.2922(6)(d). These expenses may include the costs of bringing the litigation. *See Robinson*, 870 F. Supp. at 194-95, 201; *Estate of Fahner*, 2014 WL 2511666 at \*4. In making the determination as to the distribution of settlement proceeds, the Court shall consider what is "fair and equitable, under all the circumstances." MICH. COMP. LAWS § 600.2922(6).

The undersigned conducted a hearing on this matter at which Plaintiff Kindi Spalding appeared and testified in her capacity as the Personal Representative of the Estate of Jessica Spalding.[1]  Kindi Spalding testified that she had been informed of the settlement negotiations with the Eaton County Defendants; that she understood the relative risks and potential rewards of continuing the litigation against them; that she freely and voluntarily authorized the settlement agreement with the Eaton County Defendants in the amount of $50,000.00; that she was satisfied that the settlement terms were fair and in the best interests of the Spalding family; and that she understood that the settlement proceeds would be used to offset litigation expenses without any payment to herself or other beneficiaries of the estate.  Ms. Spalding asked the Court to approve the settlement terms and the proposed distribution.

The other beneficiaries of the estate include Jessica Spalding's grandmothers, Kandace Spalding and Robin Briggs; Jessica's paternal grandfather, Javier Villarreal; and Jessica's paternal half-brother, Timothy Vanous.  Each filed notarized notices advising that they had received a copy of the motion to approve the settlement; that they consented to the proposed distribution of the settlement proceeds; and that they waived their right to attend the hearing.  (ECF No. 118, 119, 120, 121, 122).

---

[1] The hearing was audio recorded, but no transcript has been prepared.  A transcript of the hearing may be obtained upon request.

Having reviewed the allegations against the Eaton County Defendants, and their more limited role in the events leading to the death of Jessica Spalding, the undersigned judicial officer finds that the $50,000.00 settlement is a fair and equitable resolution of the litigation as against them. Accordingly, the undersigned recommends that the Court approve the settlement agreement. The next step is to consider the proposed distribution of those proceeds.

As noted above, the undersigned judicial officer has concerns about the scope of the litigation in this case. A young woman tragically lost her life, but even assuming that the death was wrongful, it is not reasonable to believe that more than sixty people are responsible for that death. The Court asked the parties to meet and confer early on in the case with a goal of narrowing the scope and number of defendants. That apparently did not happen. Instead, the Court was left with the responsibility of addressing various motions to dismiss, resulting in the dismissal of 28 defendants to date. Additional dispositive motions are pending. All of this has contributed to the costs of this litigation.

Nevertheless, and having reviewed the affidavit of Plaintiff's counsel and the supporting documents attached thereto (ECF No. 116, 116-1, 116-2), it is the undersigned's recommendation that the Court approve the distribution of the funds as requested. The undersigned is not making any specific finding as to the reasonableness of the various expenses claimed, which total more than $75,000.00. But, given the nature of this case, it is reasonable to expect that the total cost of litigating this case will meet, if not exceed $50,000.00. Accordingly, the proposed

distribution of the settlement funds is fair and equitable to the estate. The Court should, of course, consider this distribution in evaluating the proposed distribution of any further settlement proceeds or judgment.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

Date: February 14, 2021                    /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge